SOPHIA BOOTH, Respondent, *v.* THE ROME, WATERTOWN AND OGDENSBURG TERMINAL RAILROAD COMPANY, Appellant.

| 140 | 267 |
| 142 | 136 |
| 140 | 267 |
| 143 | 93 |
| 143 | 310 |
| 140 | 267 |
| 159 | 330 |
| 140 | 267 |
| f161 | 297 |
| 140 | 267 |
| 168 | 5155 |
| 140 | 267 |
| 169 | 3140 |
| 169 | 4141 |
| 140 | 267 |
| 171 | 4470 |

*It seems* the powers granted to railroad corporations are to be exercised in strict conformity to private rights, and under the same responsibility, save in some exceptional cases, as if the acts done in execution of such powers were done by an individual.

Where such a corporation in making an excavation upon its land for lawful purposes is obliged to resort to blasting, the fact that the blasting caused injury to a building on adjoining land does not alone render it liable; it must also appear that it failed to exercise due care.

The degree of care requisite in such case to constitute due care must be commensurate with the danger; the blasting must be conducted with the most cautious regard for the neighbors' rights.

The test as to the permissible use of, or action upon, one's own land, is not whether the use causes injury to a neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but is as to whether the act or use is a reasonable exercise of the dominion which the owner, by virtue of his ownership, has over his property; having regard to all the interests affected, his own and his neighbors, and also having in view public policy.

While the fact of proximity imposes an obligation of care so that one engaged in improving his own lot may do no unnecessary damage to his neighbor, it does not exclude the former from using the necessary and lawful means to adapt his lot to any lawful use, although such means may endanger the house of his neighbor.

In making a lawful excavation on its lands, in order to remove rock, defendant resorted to blasting with gunpowder. Plaintiff's house on adjoining land was seriously injured by the blasting, presumably by the jarring of the ground or concussion of the atmosphere caused by the explosion. The persons engaged in the work were, during its progress, informed of the injury that was being done. In an action to recover damages for the injury, it was conceded that defendant exercised due

care, and that the blasting was necessary in order to remove the rock. The court charged the jury in substance that defendant in using powerful explosives in blasting, did so at its peril, and was liable if plaintiff's house was injured thereby; that "it made no difference whether the work was done carefully or negligently." *Held*, error; that the use of explosives in blasting did not, under the circumstances, constitute a private nuisance.

*It seems*, that had it been practical in a business sense to remove the rock without blasting, although at a somewhat increased cost, defendant, at least after having been informed of the injury, would have been bound to resort to some other method.

So, also, *it seems*, if less powerful blasts might have been used, which would not have occasioned, or would have lessened the injury, the omission to use them was negligence.

The distinction pointed out between acts and uses of property which are permanent and continuous, and temporary acts resorted to in adapting premises to some lawful use.

(Argued March 17, 1893; decided December 5, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 22, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries to plaintiff's house in the city of Rochester, alleged to have been caused by defendant's unlawful acts.

The principal facts upon which the question presented arises are as follows:

The defendant is a railroad corporation organized under the General Railroad Law of this state. In 1887, it owned a lot in the city of Rochester, extending from the west side of St. Paul street to the Genesee river, adjacent to a lot owned by the plaintiff on the south, purchased by her in 1885, on which was a dwelling occupied by her, fronting on St. Paul street, the north side of which was about six feet south of the north line of her lot. The defendant projected an extension of its road from a point east of St. Paul street to the Genesee river and thence across the river by a bridge. It obtained the

consent of the municipal authorities to cross St. Paul street by a tunnel or cutting, and proceeded to extend its road across the street to the river.    Its line crossed St. Paul street from a point on the east side of the street, opposite the lot of the defendant, striking the center of the defendant's lot on the west side, and thence ran longitudinally through the lot to the bank of the river.

It became necessary, in order to comply with the conditions imposed by the city authorities, that the defendant's roadbed at the crossing should be depressed fifteen feet or more below the surface of the street.    The excavation required for this purpose involved also the necessity of continuing the cutting through the lot of the defendant so as to procure a uniform grade.    The soil extended about ten feet below the surface, and underlying that was rock, which it became necessary to remove to the depth of about four feet.    It was loosened by blasting with gunpowder.    It was claimed by the plaintiff, and evidence was given tending to show that in consequence of the blasting the plaintiff's house was seriously injured ; that the foundations were cracked, the beams and joists pulled apart, the plaster loosened, and that generally the house was wrenched and rendered insecure.    It is not claimed that any rock or materials were thrown by the blasts upon the plaintiff's lot.    In what particular way the injury was produced was not shown.    It may be inferred that it was caused by the jarring of the ground or the concussion of the atmosphere created by the explosions, or by both causes combined.    It was, however, affirmatively proven, without contradiction, that there was no disturbance of the earth on the sides of the excavation, and that gas and water pipes in the street, exposed by the excavation, were not displaced or injured.

It was substantially conceded that the defendant exercised due care in conducting the blasting, and that it was necessary in order to remove the rock.    There was evidence tending to show that the persons engaged in the work were informed from time to time during its progress that injury was being done to the plaintiff's house.    The trial judge instructed the

jury that the defendant in using powerful explosives in blast-ing the rock used them at its peril, and that if the plaintiff's house was injured thereby the defendant was liable for the damages occasioned, and "that it made no difference whether the work was done carefully or negligently." Exception was taken by the defendant to this instruction. The jury found that the damage to the house from the blasting was $1,750, and this sum was included in the verdict.

The court overruled the contention of the defendant that in constructing its road it was acting under legislative authority, and was on that ground, in the absence of negligence, exempted from liability, even although as between individuals an action might be maintained.

Other facts are stated in the opinion.

*S. M. French* for appellant. Defendant is not liable, and it was error to submit to the jury the question of damages sus-tained on account of blasting. (*Lasala* v. *Holbrook,* 4 Paige, 170, 172 ; *Radcliff* v. *Mayor, etc.,* 4 N. Y. 196 ; 2 Washb. on Real Prop. [4th ed.] 360, 362 ; Boone on Real Prop. § 144 ; *Losee* v. *Buchanan,* 51 N. Y. 476 ; *Marvin* v. *B. I. M. Co.,* 55 id. 538 ; *Charliss* v. *Rankin,* 22 Miss. 566 ; *O'Connor* v. *City of Pittsburg,* 18 Penn. St. 187 ; *City of Quincy* v. *Jones,* 76 Ill. 231 ; *Busby* v. *Holthaus,* 46 Mo. 161 ; *T. Co.* v. *City of Chicago,* 99 U. S. 640 ; *Dixon* v. *Wilkinson,* 2 McCarther [D. C.], 425 ; Tiedeman on Real Prop. § 618 ; *Thurston* v. *Hancock,* 12 Mass. 220 ; *Gilmore* v. *Driscoll,* 122 id. 201 ; *McGuire* v. *Grant,* 25 N. J. L. 356 ; *Hatch* v. *V. C. R. R. Co.,* 25 Vt. 64.) This case was sent to the jury upon the same theory as to liability as though the defendant were a private person. This was error. (*N. Y. C. & H. R. R. R. Co.* v. *Kip,* 46 N. Y. 551 ; *Radcliff* v. *Mayor, etc.,* 4 id. 195 ; *Bellinger* v. *N. Y. C. R. R. Co.,* 23 id. 42 ; *Moyer* v. *N. Y. C. & H. R. R. R. Co.,* 88 id. 351 ; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 id. 98 ; *T. Co.* v. *City of Chi-cago,* 99 U. S. 635, 641 ; *Conklin* v. *N. Y., O. & W. R. Co.,* 102 N. Y. 107 ; Laws of 1850, chap. 140, § 18 ; *Benner* v.

*A. D. Co.* 134 N. Y. 156; Pierce on Railroads, 143.) There is no evidence in the case from which the jury could compute the damages for the invasion of plaintiff's land by the embankment.' (3 Sedg. on Dam. [8th ed.] § 947.)

*David Hays* for respondent. The blasting was a nuisance, and defendant is liable to the plaintiff for the damage which she suffered from it. (Cooley on Torts, 607, 608; *Carhart* v. *A. G. Co.*, 22 Barb. 297; *Hay* v. *C. Co.*, 2 N. Y. 159; *McAndrews* v. *Collard*, 13 Vroom, 189; *Tremain* v. *Cohoes Co.*, 2 N. Y. 163; *Bahan* v. *P. J. G. L. Co.*, 122 id. 18; *Losee* v. *Buchanan*, 51 id. 476; *McKeon* v. *Lee*, 51 id. 300; *Eaton* v. *B., C. & M. R. R. Co.*, 51 N. H. 504; Sedg. on Dam. [2d ed.] 113; Dwarris on Stat. 695; Cooley on Const. Lim. 530; *People* v. *King*, 110 N. Y. 418.) There is evidence to support the verdict for $250 for damages caused by the deposit of earth on plaintiff's lot. (*Briggs* v. *Hilton*, 99 N. Y. 517; *Head* v. *Hargrave*, 105 U. S. 45; *Post* v. *W. S. R. R. Co.*, 123 N. Y. 580, 591; *Feeney* v. *L. I. R. R. Co.*, 116 id. 375, 381; *Mairs* v. *M. R. E. Assn.*, 89 id. 498; *Noonan* v. *City of Albany*, 79 id. 470; *Seifert* v. *City of Brooklyn*, 101 id. 136.)

Andrews, Ch. J. We entertain no doubt of the correctness of the ruling at the Circuit that the defendant stands in no better position in defending the action than if the controversy was between individuals.

The rule that the legislature may, in the public interest and for public purposes, authorize and legalize acts causing consequential injury to private property, not amounting to a taking, without providing compensation, and that the legislative authority may be pleaded in bar of any claim for indemnity, although if the act had been done without such authority an action would lie, has no application to acts of a railroad or other business corporation in the execution of chartered or statutory powers. The rule adverted to, although operating in some cases with great severity, which compels an individual

to bear a special loss for the benefit of the community at large, in place of distributing the burden, is an application of the maxim *salus populi est suprema lex*, and rests upon the transcendent power of the legislature, within constitutional limitations, to enact whatever it may deem essential to the public welfare. But while there are decisions which give countenance to the view that an authority conferred upon a railroad corporation to construct a railroad, carries with it immunity from liability in executing the work for consequential damages to private property, to the same extent as pertains to the sovereign in executing public works (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42), it is now the settled doctrine in this state that the powers granted to such corporations are to be construed as privileges conferred, but upon the understanding that they shall be exercised in strict conformity to private rights and under the same responsibility as though the acts done in execution of such powers were done by an individual. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10.) This doctrine accords with reason and with the presumed intention of the legislature. The franchises of a railroad corporation are conferred in consideration of supposed public benefits which will result from the construction of its road. The projectors of such an enterprise are moved by considerations of personal advantage. To acquire corporate character and privileges they are willing to subject themselves to certain public duties. But it is quite unreasonable that in executing its corporate powers the corporation should be exempted from liability for injuries to private property, as though it was acting as a strictly public agent. There may be limited exceptions, as in cases of highway crossings, where an adjustment of the grade becomes necessary, working a consequential injury to adjacent landowners, which is remediless, and the legislative authority will also bar any remedy for certain discomforts consequent upon the necessary operation of the road, such as noise and smoke of passing trains.

We, therefore, agree with the courts below that the right of

the plaintiff to recover in this case, and the liability of the defendant, depend upon the same rule as would govern the parties if both were natural persons, and the injury to the plaintiff's dwelling had resulted from blasting by an adjacent owner on his land in the course of adapting it to individual uses.

The plaintiff, upon the findings of the jury, sustained a serious injury. It is true that witnesses on the part of the defendant gave evidence tending to show that the house was imperfectly constructed, and that the foundation walls were giving way before the excavation was commenced. But the verdict having been affirmed by the General Term, there can be no controversy here that the blasting caused damage to the house to the amount of the verdict. But mere proof that the house was damaged by the blasting would not alone sustain the action. It must further appear that the defendant in using explosives violated a duty owing by him to the plaintiff in respect of her property, or failed to exercise due care. Wrong and damage must concur to create a cause of action.

If the injury was occasioned by the omission to use due care, this alone would sustain the action, even if the right of the defendant to use explosives in removing the rock was conceded. If one by carelessness in making an excavation on his own land causes injury to an adjoining building, even where the owner of the house has no easement of support, he will be liable. (*Leader* v. *Moxon*, 3 Wils. 460; *Lawrence* v. *Great Northern Railway Co.*, 16 Ad. & El. 643–653; Leake's Law of Real Prop. 248.) The law exacts from a person who undertakes to do even a lawful act on his own premises, which may produce injury to his neighbor, the exercise of a degree of care measured by the danger, to prevent or mitigate the injury. The defendant could not conduct the operation of blasting on its own premises, from which injury might be apprehended to the property of his neighbor, without the most cautious regard for his neighbor's rights. This would be reasonable care only under the circumstances. If it was practicable in a business sense for the defendant to have removed

the rock without blasting, although at a somewhat increased cost, the defendant would, we think, in view of the situation, and especially after having been informed of the injury that was being done, have been bound to resort to some other method.   There is evidence that the rock from some parts of the excavation was loosened by the use of iron bars, and if this was practicable as to all of it the jury might well have found that this means should have been adopted.   So, also, if less powerful blasts might have been used, which, if used, would not have occasioned injury, or would have lessened it, the omission to use them might well be considered as negligence. The mode of exercising a legal right, where there is a choice of means, may of itself give a cause of action.   The plaintiff, however, on this record is precluded from claiming that the judgment may be sustained because of negligence in the mode of blasting.   It must be assumed from concessions made on the trial and from the rule of law laid down by the court, that blasting was the only mode of removing the rock practically available ; that it was conducted with due care, and that it was necessary to enable the defendant to conform the roadbed to the established grade.   This is a case, therefore, of unavoidable injury to the plaintiff's house, occasioned by the act of the defendant in blasting on its own premises, in order to adapt them to a lawful use, the mode adopted being the only practicable one and the work having been prosecuted with due care and without negligence.   The question is, whether the act of the defendant, connected with the resulting injury, was a legal wrong for which the plaintiff has a right of action.

The general rule that no one has absolute freedom in the use of his property, but is restrained by the co-existence of equal rights in his neighbor to the use of his property, so that each in exercising his right must do no act which causes injury to his neighbor, is so well understood, is so universally recognized, and stands so impregnably in the necessities of the social state, that its vindication by argument would be superfluous. The maxim which embodies it is sometimes loosely interpreted as forbidding all use by one of his own property, which annoys

or disturbs his neighbor in the enjoyment of his property. The real meaning of the rule is that one may not use his own property to the injury of any legal right of another. The cases are numerous where the lawful use of one's property causes injury to adjacent property, for which there is no remedy, because no right of the adjacent owner is invaded, although he suffers injury. The cases of excavation furnish a striking illustration. The easement of natural support of the land of one by the land of the adjacent owner, applies only to lands in their natural·condition, and does not extend so as to give the owner of a building erected on the confines of his land, the right to have it supported laterally by the land of his neighbor; and so it has become the settled doctrine of the law that if one by excavating on his own land adjacent to the land of his neighbor, using due care, causes a building on his neighbor's land to topple over, there is no remedy, provided the weight of the building caused the land on which it stood to give way. There is in the case supposed, damage, but no wrong, because what was done by the adjacent owner was in the lawful and permitted use of his own property. (*Wyatt* v. *Harrison*, 3 B. & Ad. 871; *Partridge* v. *Scott*, 3 M. & W. 220; *Lasala* v. *Holbrook*, 4 Pai. 170; *Thurston* v. *Hancock*, 12 Mass. 220.)

The fundamental proposition upon which the plaintiff's counsel rests his argument in support of the recovery, is that the use of the explosives in blasting constituted, under the circumstances, a private nuisance, and that according to the general rule of law one who creates or maintains a nuisance is liable for any special injury to person or property resulting therefrom. The right of the defendant to excavate on its land for its roadbed is not challenged, but the right to use the destructive agency of gunpowder in the work of excavation, liable to produce injury, and which did occasion it, is denied. The exception is not to the thing done, but to the mode of doing it. It is to be observed, however, that under the concessions in the case and the rulings on the trial, it must be assumed ·that the excavation could not have been done except by the use of explosives. This mode of doing the work was, therefore, of

the substance of the right, if the right existed at all. It has been frequently said that the right of an owner of land to use his property as he likes, does not justify the maintaining of a nuisance, or the commission of a trespass, and Blackstone, after stating that where one, by smelting works on his own land, causes noxious vapors, which injure the corn or grain on his neighbor's land or damages his cattle, this would be a nuisance, proceeds to say, " that if you do any other act in itself lawful, which, yet being done in that place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent on him to find some other place to do that act where it will be less offensive." (2 Black. Com. ch. 13, p. 218.) There are many illustrations in the books of the doctrine stated by the learned commentator, that the use of one's own land for the purpose of a lawful trade may become a nuisance to his neighbor. But whether a particular act done upon, or a particular use of one's own premises constitutes a violation of the obligations of vicinage, would seem to depend upon the question whether such act or use was a reasonable exercise of the right of property, having regard to time, place and circumstances. It is not everything in the nature of a nuisance which is prohibited. There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort or injury to his neighbor, which are *damnun absque injuria.* The case of the building caused to fall by an excavation in an adjoining lot, already referred to, is an illustration. The right of an owner of a mine to excavate the mineral in his mine, although by so doing it causes the water to collect therein and to be discharged into an adjacent mine on a lower level, thereby causing damage to the mine of such adjacent owner, is another illustration of a lawful use of property followed by damage to the property of another, for which no action lies. (*Smith* v. *Kenrick,* 7 C. B. 515 ; *Baird* v. *Williamson,* 15 C. B. [N. S.] 376 ; *Wilson* v. *Waddell,* 2 App. Cas. 95.) In referring to these cases, in *Hurdman* v. *North Eastern Railway Co.* (L. R. [3 C. P. Div.] 168), the court said : " The owner of lands holds his right to the enjoyment thereof, sub-

ject to such annoyance as is the consequence of what is called
the natural use by his neighbor of his land, and that, where
an interference with his enjoyment by something in the nature
of a nuisance is the cause of complaint, no action can be sus-
tained if this is the result of a natural use by a neighbor of
his land." Whether a particular act or thing constitutes a
nuisance may depend on the circumstances and surroundings.
The use of premises for mechanical or other purposes, causing
great noise, disturbing the peace and quiet of those living in
the vicinity, and rendering life uncomfortable, or filling the
air with noxious vapors, or causing vibration of the neighbor-
ing dwellings, constitute nuisances, and such use is not justi-
fied by the right of property. (*Fish* v. *Dodge*, 4 Den. 311;
*McKeon* v. *See*, 51 N. Y. 300; *Cogswell* v. *R. R. Co.*, *supra*.)
These and like cases are those where the property of the
owner is appropriated to a permanent use which is a constant
and serious interference with the enjoyment by other property
owners of their property. But there is a manifest distinction
between acts and uses which are permanent and continuous
and temporary acts which are resorted to in the course of adapt-
ing premises to some lawful use. For example, the erection of
an iron building adjacent to a dwelling might, for the time
being, cause as much noise and discomfort as would arise from
conducting the business of finishing steam boilers on adjacent
premises, but this would not constitute a nuisance, and the
owner of the dwelling would have no remedy. The streets
may be obstructed temporarily, subject to municipal regula-
tions, for the deposit of building materials, and the party
would not be chargeable with maintaining a nuisance. The
test of the permissible use of one's own land is not whether
the use or the act causes injury to his neighbor's property, or
that the injury was the natural consequence, or that the act is
in the nature of a nuisance, but the inquiry is, was the act or
use a reasonable exercise of the dominion which the owner of
property has by virtue of his ownership over his property,
having regard to all interests affected, his own and those of
his neighbors, and having in view also public policy.

The rule announced by the trial judge, that the use, by an owner of property, of explosives in excavating his land, is at his peril and imposes liability for any injury caused thereby to adjacent property irrespective of negligence, is far reaching. It would constitute, if sustained, a serious restriction upon the use of property, and in many cases greatly impair its value. The situation in the city of New York furnishes an apt illustration. The rocky surface of the upper part of Manhattan Island makes blasting necessary in the work of excavation, and, unless permittted, the value of lots, especially for business uses, would be seriously affected. May the man who has first built a store or warehouse or dwelling on his lot and has blasted the rock for a basement or cellar, prevent his neighbor from doing the same thing when he comes to build on his lot adjoining, on the ground that by so doing his own structure will be injured? Such a rule would enable the first occupant to control the uses of the adjoining property, to the serious injury of the owner, and prevent or tend to prevent the improvement of property. The first occupant in building on his lot exercised an undoubted legal right. But his prior occupation deprived his neighbor of no legal right in his property. The first occupant acquires no right to exclude an adjoining proprietor from the free use of his land, nor to use his own land to the injury of his neighbor subsequently coming there. (*Platt* v. *Johnson*, 15 Jo. 213; *Thurston* v. *Hancock*, *supra*; *Tipping* v. *St. Helen's Smelting Co.*, L. R. [1 Ch. App.] 66; *Campbell* v. *Seaman*, 63 N. Y. 568.) The fact of proximity imposes an obligation of care, so that one engaged in improving his own lot shall do no unnecessary damage to his neighbor's dwelling, but it cannot, we think, exclude the former from employing the necessary and usual means to adopt his lot to any lawful use, although the means used may endanger the house of his neighbor.

We have found no case directly in point upon the interesting and important practical question involved in this appeal. It was held in the leading case of *Hay* v. *Cohoes Co.* (2 N. Y. 159), that the right of property did not justify the owner

of land in committing a trespass on the land of his neighbor
by casting rocks thereon in blasting for a canal on his own
land for the use of his mill, although he exercised all due care
in executing the work. In that case there was a physical
invasion by the defendant of the land of the plaintiff. This
the court held could not be justified by any consideration of
convenience or necessity connected with the work in which
the defendant was engaged. In the conflict of rights the court
considered that public policy required that the right of the
defendant to dig the canal on his own land must yield to the
superior right of the plaintiff to be protected against an
invasion of his possession by the act of the defendant. The
case of *Benner* v. *Atlantic Dredging Co.* (134 N. Y. 156),
was the case of an injury to the plaintiff's house, resulting
from the jarring caused by the blasting of rocks in Hell Gate,
and it was held that the injury was remediless, for the reason
that the defendant was acting under the authority of the gov-
ernment of the United States by virtue of a contract authorized
by congress. It has been held that the keeping of gunpowder
in large quantities near inhabited dwellings is a nuisance, and
in the case of explosion subjects the party keeping it to liability
for damages occasioned thereby. (*Myers* v. *Malcolm*, 6 Hill,
292; *Heeg* v. *Licht*, 80 N. Y. 579.) So also it has been held
that the working of quarries by the use of gunpowder, to the
injury of property in the vicinity, gives a right of action.
(*City of Tiffin* v. *McCormack*, 34 Ohio St. 638; *Scott* v. *Bay*,
3 Md. 431.) Many of the cases cited by counsel are cases
of the permanent appropriation of property for dangerous or
noxious uses causing damage. The distinction between such
cases and those where the injury arises from acts done in the
necessary adjustment of property for a lawful use by means
necessary and not unusual, but involving damage to adjacent
property, has been adverted to. We recognize the difficulty
of formulating a general rule regulating the rights of adjacent
landowners in the use of their property, and we realize how nar-
row the margin is which separates this from some decided cases.
In *Marvin* v. *Brewster Iron Co.* (55 N. Y. 557), the opinion

of the learned judge who wrote in that case sustains the conclusion we have .reached in this case. But the point was not necessarily involved, since it was held that the defendant there had acquired by grant the right to employ blasting in removing the mineral, and that the plaintiff, a subsequent grantee of the surface, could not complain of injury to his house therefrom in the absence of negligence on the part of the defendant in conducting the work. Judge FOLGER in that case said: "Whatever it is necessary for him (defendant) to do for the profitable and beneficial enjoyment of his own possession, and which he may do with no ill effect to the adjacent surface in its natural state, that he may do though it harm erections lately put there." If the learned judge intended to lay down the rule that the owner of land may do anything on his own land which would do no injury to the adjacent property if it had remained in its natural state, the proposition is probably too broad. One may do in a barren waste many things which he could not lawfully do in or near an inhabited town.

But the defendant here was engaged in a lawful act. It was done on its own land to fit it for a lawful business. It was not an act which, under all circumstances, would produce injury to his neighbor, as is shown by the fact that other buildings near by were not injured. The immediate act was confined to its own land, but the blasts, by setting the air in motion, or in some other unexplained way, caused an injury to the plaintiff's house. The lot of the defendant could not be used for its roadbed until it was excavated and graded. It was to be devoted to a common use, that is, to a business use. The blasting was necessary, was carefully done, and the injury was consequential. There was no technical trespass. Under these circumstances, we think, the plaintiff has no legal ground of complaint. The protection of property is doubless one of the great reasons for government. But it is equal protection to all which the law seeks to secure. The rule governing the rights of adjacent landowners in the use of their property, seeks an adjustment of conflicting interests through a reconcilli-

ation by compromise, each surrendering something of his absolute freedom so that both may live. To exclude the defendant from blasting to adapt its lot to the contemplated uses, at the instance of the plaintiff, would not be a compromise between conflicting rights, but an extinguishment of the right of the one for the benefit of the other. This sacrifice, we think, the law does not exact. Public policy is promoted by the building up of towns and cities and the improvement of property. Any unnecessary restraint on freedom of action of a property owner hinders this. The law is interested also in the preservation of property and property rights from injury. Will it in this case protect the plaintiff's house by depriving the defendant of his right to adapt his property to a lawful use, through means necessary, usual and generally harmless? We think not.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.