# THE
# New York Supplement
## VOLUME 43.
### AND
## New York State Reporter,
## VOLUME 77.

(13 App. Div. 299.)

### HILL v. SCHNEIDER et al.

(Supreme Court, Appellate Division, First Department.   January 15, 1897.)

1. INJUNCTION —INJURY TO LEASEHOLD—BLASTING ON ADJOINING PROPERTY.
   A tenant of a building is entitled to an injunction against blasting about to be done by a contractor in removing rock from adjoining premises, where it is shown that the walls of the building have already been shattered by blasts of the same character and force made at a greater distance, and that the excavation can be readily made in a safer manner, though at an increased cost.

2. SAME—ADEQUATE REMEDY AT LAW.
   In such case, where the tenant is engaged in business in the premises, his remedy at law, by an action for damages, is inadequate, and the injury is irreparable, within the rule determining his right to an injunction.

3. SAME—ACTS OF SUBCONTRACTOR—RESPONSIBILITY OF OWNER.
   Where the owner of property has let a contract for an excavation thereon, which may be legally performed, the fact that a subcontractor is proceeding with the work in a negligent and improper manner, to the injury of adjoining property, affords no ground for a preliminary injunction against the owner, who is not shown to have any control over the manner in which the work is done.

Appeal from special term, New York county.

Action by William R. Hill against Douglas H. Schneider and William Bradley.   From an order denying a motion for a preliminary injunction, plaintiff appeals.   Affirmed as to defendant Schneider, and reversed as to Bradley.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Charles De Hart Brower, for appellant.
John Frankenheimer, for respondents.

43 N.Y.S.—1

RUMSEY, J. The plaintiff is the lessee and in the possession of the premises known as "No. 103 West Thirty-Sixth Street," under a lease which expires on the 1st of May, 1897. He carries on at that place the business of plumbing and other business, and has done so for several years. The defendant Schneider is the owner in fee of the premises. He also owns the land on Thirty-Sixth street, between Broadway and Sixth avenue, extending northerly about 100 feet. He is engaged in work preliminary to the construction of a large hotel building on these premises, and, to that end, has entered into a contract with a person who is not a defendant in this action, to make the necessary excavations, and to erect the building. The original contractor has caused the buildings upon a large portion of said land to be removed, and has entered into a contract with the defendant Bradley to make such excavations upon the whole of said land, including the premises occupied by the plaintiff's building, as are necessary for the construction of the hotel which Schneider intends to build. Over a large portion of this area, blasting has been in progress to a considerable extent. It appears that during the progress of the work a notice was served upon the defendant Schneider, by the department of buildings, that the building occupied by the plaintiff was unsafe and dangerous in certain respects specified in the notice, and Schneider was required to take steps to secure the building by properly shoring it up, or to take it down. In pursuance of that notice, he proceeded to take down the wall of the two upper stories, but the remainder of the building, which is occupied by the plaintiff, has been permitted to stand, having, as it seems, a temporary roof over it, so that it is not entirely uninhabitable. A large amount of blasting has already been done in such a way and with such unnecessary force as to shatter the walls of the building, and plaintiff says that the insecurity complained of by the department of buildings was brought about by the excessive blasts used in causing the explosions in the course of the excavations. He alleges in his affidavits that this was done, and that the notice was procured to be sent by the department of buildings, in pursuance of a scheme of Schneider's to drive the plaintiff away from the premises so that Schneider and his contractors could take possession of them for the purpose of proceeding with the construction of the hotel. This is denied by the defendants, but the undisputed facts and circumstances surrounding the transaction are such that there would be little difficulty, if it were necessary to do so, in concluding that the defendants were not at all unwilling to proceed, at least, as far as they could without incurring liability, to render the premises so uninhabitable that the plaintiff could not occupy them; and it is more than inferable from the affidavits that, in their anxiety to proceed in the exercise of their rights as far as the law would permit them, they have, intentionally or otherwise, gone considerably beyond them, and inflicted upon the plaintiff damages for which they have become liable. But it is not necessary to examine that question further here, because we are of opinion that, upon the facts which are plainly established, the plaintiff

has shown that he is entitled to his injunction, at least so far as to prevent such blasting upon the premises as would further injure the house, which has already been seriously damaged.

The plaintiff alleges, and it is not denied, that the defendant Bradley, in blasting the premises, has caused to be drilled, to the necessary depth, holes three inches in diameter, which have been filled with giant powder, and the blasts thus prepared let off, in such a way as to shatter the rock, and enable the workmen to take it out. It is not denied that this has been the course of the work. It is conceded that the blasts thus let off shattered the rock in the immediate vicinity of their location to a considerable extent, so as to permit its removal easily; but just how far beyond the location of the holes in which the blasts were placed the rock was shattered does not appear. It is alleged by the plaintiff, and is not denied, that, at the time of the making of the affidavits upon which this motion was based, the workmen were engaged in drilling holes of the same diameter and depth as had formerly been drilled, within three feet of the face of the wall of the plaintiff's building, and that these holes were drilled for the purpose of further blasting the rock in the excavation. This is not denied by Bradley or those who make affidavits for him. It is stated by the plaintiff that the effect of letting off the blasts which have already been exploded is to seriously shatter the walls of his building, and in fact, as he claims, the ruinous condition of the walls mentioned above, in the notice from the department of buildings, was caused by these blasts. This is denied by the defendants' witnesses who testify on that subject. But we think a fair consideration of all the affidavits establishes that the ruinous condition of the plaintiff's building was caused by the action of these blasts. At least, no other good reason is suggested why such a condition, which undoubtedly exists, should be so suddenly caused; and, as the firing off of the blasts may have been a sufficient cause, there is no reason why it should not be accepted as the cause, unless another sufficient one can be discovered by reference to the affidavits, which is not the case.

The affidavits presented by the plaintiff state that the firing off of blasts such as already have been fired off, in the holes which have been already drilled, will cause further damage to the building; in fact, will make it unsafe to occupy it. These affidavits are made by persons who are familiar with the business, and who have been accustomed to observe the effect of the explosion of blasts of giant powder, and are able, as it would seem, to judge with reasonable accuracy of the action of such blasts. On the part of the defendants it is denied that the blasts are likely to produce any such effect. But a careful examination of the affidavit of the defendants' witnesses fails to satisfy us that the blasting, as proposed to be done by Bradley, will not injure the plaintiff's property. In fact, the affidavit produced by the defendants, of Mr. Horgan, the architect of the hotel, who says that he is familiar with this sort of work, satisfies us that there is very great danger that further blasting will

blow down the plaintiff's building. He says that it may be that the blasting carried on on the premises adjoining this wall, even though conducted with the utmost care and skill, might result in injury to the wall. But he says that such injury would be due, not so much to the blasting, as to the inherent weakness of the wall itself. He concludes, however, that he does "not think that the blasting operations, if carefully carried on, in the manner now pursued by the defendant Bradley, upon said plot of ground, would necessarily result in injury to the plaintiff's wall." This seems to be about the strongest opinion that can safely be expressed by the gentleman, who is quite as able as anybody else to base a judgment upon the facts. Even the defendant Bradley, who gives his opinion, in a half-hearted sort of way, that no injury will result to the plaintiff from firing off these blasts, says that, if injury does result, it will be due to the fact that the plaintiff's building is probably over 30 years of age, and flimsily constructed. So that, upon the whole testimony, we think it is almost necessarily to be inferred that the firing off of these blasts in the manner which is apparently proposed by Bradley will injure the plaintiff's building.

The affiants for the plaintiff say that there is another practicable way of blasting out the rock close to this wall, in such a way as not to injure it. They testify that they are accustomed to that kind of work, and that the way they described of doing the work, by drilling smaller holes, with hand drills, and using small charges of powder, is the usual method adopted by contractors when taking out rock near the walls of buildings. That is denied by one or two of the witnesses sworn on behalf of the defendants, so far as that they say that it is not the usual way of doing that sort of business. They do not claim that the work cannot be done by blasting in that way, but they testify that it is not practicable, in a business sense, thus to do it. Just what that means is quite enigmatical. Whether a thing is practicable in a business sense depends upon the judgment of the particular person to whom the question of its practicability is presented, and the conclusion which he will form upon that question is very likely to depend entirely upon his notion of what is a reasonable profit to be gotten from doing the work in a particular way, and how much profit he thinks he ought to get in the particular case. A statement of that kind necessarily can have but little weight, unless it sets forth facts showing the foundation of the opinion, and enabling the court to judge of the accuracy with which it is formed. It is not difficult for one who is familiar with the literature upon this particular branch of the law to ascertain the origin of the phrase which is used in these affidavits, and to judge of the weight to be given to it. It had its origin as a statement of a proposition of law, and, as such, it may have a well-defined meaning; but when it is sought to be changed from a proposition of law to a statement of a fact based upon opinion, without any information as to the facts upon which the opinion is formed, it must necessarily have very little weight. Therefore, the case presents itself substantially in this way:

The plaintiff's building has already been seriously injured by blasts let off in the course of making this excavation. The defendant Bradley proposes to let off further blasts in the course of the same work, nearer to the plaintiff's building than those already exploded. The blasts already let off have shattered the wall of the plaintiff to some extent. The ones to be let off are almost certain to do the same thing to a greater extent. The course of work pursued by Bradley is not necessary to the making of the excavation, but it is easy to do it in a different way, with the use of smaller blasts, so as not to injure the wall of the plaintiff's building, although at, perhaps, a somewhat greater cost to the contractor; and such is the usual way of doing that work where there is danger of injuring a neighbor's premises. Upon that state of facts, we are quite clear that the plaintiff is entitled to an injunction restraining this blasting in the way in which Bradley proposes to do it. The rule, "Sic utere tuo ut alienum non lædas," is of wide application, and it is a maxim of the law to which the exceptions are few. It is not intended, of course, in the application of this maxim, to take away from any person the right to improve his own property in a lawful manner; but the law requires that, when he shall attempt to do so, he must use it with a due regard for the rights of other people, and, in every way legally possible, he must avoid injury to those rights. One living in a city must necessarily submit to considerable inconvenience which arises from the proximity of other people, and from the carrying on of unpleasant trades and businesses near to him; and such things will be restrained only when it is absolutely certain that the person engaged in them is going beyond his legal right, to the injury of his neighbor. But when one has occasion, in a crowded community, to do upon his own premises anything which is likely to injure his neighbor, he is called upon to use the utmost care, and the most approved methods, so as not to inflict any injury beyond what is necessary for the performance of his lawful work in a lawful manner. If he goes beyond that, he makes himself liable to respond to his neighbor in damages.

The law upon this subject is laid down in the case of Morgan v. Bowes, 17 N. Y. Supp. 22, 62 Hun, 623, which was an action for damages for blasting upon the defendants' premises, as the result of which the plaintiff's buildings were seriously shaken and injured. It appeared in that case that the blasts were deliberate and continuous, and they did great and increasing damage to the plaintiff's property. The defendants claimed that they were not liable, because they could only be chargeable in damages when an actual trespass was committed by reason of the blasting upon the plaintiff's land; that is, where the rock or soil was blown over into the adjoining lot, or against the adjoining house. This claim of the defendants was expressly overruled, and it was held that injuries resulting from violent and continuous concussions, by which the plaintiff's house was shaken and injured, must be compensated for in damages, just as though the injuries had been caused by rocks thrown against the house which had produced the same result. The case is precisely

in point here, to the effect that blasting of this nature, producing injuries such as appear to have been produced in this case, are an invasion of the plaintiff's rights, for which he is entitled to recover damages.

The defendants insist that the case is within that of Booth v. Railroad Co., 140 N. Y. 267, 35 N. E. 592, and the learned justice at the special term denied the motion upon the authority of that case. But an examination of that case shows, we think, that the facts here are very different. It was conceded in that case that the work to be done by the railroad company, and which caused the injury to the plaintiff's house, could be done in no other way than by blasting, as the defendants were blasting, and that the defendants, in blasting as they did, were using due care. Upon those concessions, the court held that as the defendants were doing only what was necessary to make an excavation upon their own land, and were doing it with proper care, they were not liable; but the chief judge, in delivering the opinion of the court, says, expressly, that if there had been any negligence shown on the part of the defendants, or if it had been practicable, in a business sense, to do the work in such a way as not to injure the plaintiff's premises, and the defendants had not done it in that way, the action for damages would lie. The case was evidently decided upon the special facts made to appear upon the trial, and it is undoubtedly an authority for any other case where the same conditions exist. But the rule laid down in that case, while supposed by the court to be necessary for the protection of persons improving their land, ought not to be extended to give those persons the privilege unnecessarily to destroy the buildings of their neighbors. It is undoubtedly true, as stated in that case, that one is not to be prevented from improving his own premises because a building has been erected by his neighbor upon an adjoining lot. It is equally true that one who has a building upon his own premises is not to be punished for having improved his land, by permitting his neighbor, who has not improved his lot, to shake down the building first built, so that another one may be erected alongside of it. Such a rule of law would operate just as much to prevent the improvement of land as the rule which was repudiated in the Case of Booth. The true rule must be that, while any person is at liberty to improve his own land, yet, in the doing of that, he must use every practicable means to avoid injury to his neighbor, and he will not be permitted by the use of powerful explosives upon his own land to injure the house of his neighbor. Certainly is this so when, by the use of smaller explosives or in some other way, even at a greater expense, he can avoid such a result. In this case it is very clear that the blasting in the way proposed to be done by Bradley is not necessary, even within the exceedingly broad rule in favor of builders laid down in the Booth Case, supra.

But it is claimed on the part of the defendants that this injury is not irreparable. The effect of the blasting will be to shake down the house, and make it entirely uninhabitable, with the necessary result that the plaintiff will be obliged to leave it, to abandon his busi-

ness, and go elsewhere.    While, in a sense, this may be compensated for in damages, yet the remedy at law will be entirely inadequate, within all the authorities, and the injury will be irreparable.

Professor Pomeroy, in discussing when the legal remedy is inadequate, so as to authorize relief in equity, says:

"The legal remedy is not adequate simply because a recovery for pecuniary damages is possible.   It is only adequate when the injured party can, by one action at law, recover damages which constitute a complete and certain relief for the whole wrong,—a relief virtually as efficient as that given by a court of equity."   Pom. Eq. Jur. § 1357, note 1.

High, Inj. §§ 701, 704; Livingston v. Livingston, 6 Johns. Ch. 497.

In that statement he is sustained by all the authorities; and, within the rule which he lays down, the plaintiff is clearly entitled to his injunction so far as the defendant Bradley is concerned.   But the defendant Schneider stands in an entirely different position. While he is the owner of these premises, and is desirous of obtaining possession of them, and it is fair to infer that he has used every means in his power to do so, and even that he is not unwilling to see this house destroyed, so that he may have possession of his land, yet we cannot see from the affidavits here that he has been a party to the blasting, so as to warrant an injunction against him.   It appears that he has made a contract with the Charles S. Kendall Company to do this work.   So far as appears, in making this contract he did nothing to violate the rights of the plaintiff.   Certainly, the making of the contract itself was not in violation of the rights of the plaintiff, for it was not necessary under the contract for the contractors to take possession of this land, or to do anything to which the plaintiff could object.   The plaintiff does not show that any portion of this blasting has been controlled by the defendant Schneider.   He has nothing to do with it, upon the facts stated in the papers presented to the court. He has no control over Bradley, and no privity of contract with him, and could not in any way restrain his action.   For that reason, we are of the opinion that the plaintiff has not shown anything to entitle him to a preliminary injunction against Schneider, because there is nothing in the case which would warrant a finding that Schneider either has done or could do any act about the blasting out of this excavation which would affect the plaintiff's rights, or, indeed, that he has any control over the excavation whatever.

Upon the facts which were made to appear, there was no privity between Bradley and Schneider.   Schneider made a contract with the Kendall Company to accomplish a certain result, leaving it to them to use the ordinary means to complete the work which they agreed to do.   He had, so far as appears, no right to control them as to their manner of doing the work.   They were responsible to him only for the results to be obtained, and the thing to be done was lawful in itself.   That being the case, neither the Kendall Company nor Bradley occupied towards Schneider the relation of a servant.   Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755.   So long as the work which was to be done did not necessarily involve an infringement of the rights

of the plaintiff, but might have been done with due regard to them, Schneider is not responsible for any violation of those rights, unless it has been proved that he personally directed it. There is a class of cases where the owner is equally responsible with the contractor for injuries done in the progress of the work, but those are cases where the contractor is employed to do an act which is illegal in itself, or which would be likely to infringe upon the rights of the plaintiff, however skillfully it was performed. Shear. & R. Neg. § 175; City of Joliet v. Harwood, 86 Ill. 110. But, upon the facts shown, this is not one of those cases. Upon the facts as they appear, no reason exists why an injunction should be granted against Schneider, because a preliminary injunction should only be issued when the particular defendant who is to be enjoined is proceeding to do some act which might injure the plaintiff during the pendency of the action. What may be made to appear upon the trial of the action with regard to Schneider's agency in this business is a different thing. All that it is necessary for us to say is that, upon the papers presented upon this motion, it is not shown that Schneider had any part in the violation of the plaintiff's rights by the blasting in that excavation; and, for that reason, the order, so far as he was concerned, was a proper one.

The order must therefore be affirmed as to the defendant Schneider, with $10 costs and disbursements to be paid by the plaintiff to him, and reversed as to the defendant Bradley, with $10 costs and disbursements to be paid by Bradley to the plaintiff, and, as to Bradley, the injunction granted, with $10 costs to abide event. All concur.