Charles Lambíase, J.
The above-entitled claims were tried together. They allege in substance negligence on the part of the State of New York in the conduct of blasting operations on property owned by it in the city of Albany, New York, known as the 1 £ Campus Site ’ ’ and more particularly that portion thereof extending along the south side of Washington Avenue a distance of about 3,800 feet, running from Brevator Street on the east toward the west almost to Tudor Road and extending southerly of equal width approximately 2,400 feet to a point some distance from Western Avenue, preparatory to the erection of certain buildings thereon and resulting in damage to property at No. 136 Clermont Street allegedly owned by claimants, John J. Scully and Emma Scully, his wife, and to property at 152 Melrose Avenue, allegedly owned by claimants, Chester A. and Julia L. La Noue, and to property at 150 Melrose Avenue, allegedly owned by Ernest W. La Noue, all situate in the general locality of said Campus Site property, the La Noue properties being located directly across the street from the Campus Site.
The State of New York maintains that claimants have failed to sustain their burden of proving negligence on its part or of showing that the acts performed by it, its agents and employees, on its said property constituted an unreasonable dominion by *300 it over the same, and it insists that the claims are within the rule as laid down in Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co. (140 N. Y. 267) upon the authority of which they must be dismissed on the merits. We are unable to sustain the position of the State of New York.
During the Summer and Fall of 1953 the State of New York, through its Department of Public Works, made borings on a portion of the afore-mentioned Campus Site preparatory to the erection of certain buildings. In the months of October and November of that year, after some 13 borings had been made on the site, and during the course of which in at least one hole thus bored bedrock had been reached, the State of New York employed the seismographic method of ascertaining the depth from the surface of the ground to bedrock, which procedure entailed the use of dynamite. Dynamite was used on the area in question on 14 different days during the said months of October and November, the final blasting operations being conducted on November 20, 1953. Some 30 holes were blasted in the area. During the course of this blasting, the State of New York, through its agents and employees, was notified that damage was resulting or might reasonably result to the properties of the claimants through such operations, and on one occasion the police of the City of Albany, New York also notified the State of New York, through its employees, that complaints were being made by persons in the locality by reason thereof. It nevertheless continued its blasting procedure to its conclusion on November 20, 1953.
In our opinion the blasting operations as carried on by the State of New York were not necessary for, through its boring-operations, it had ascertained the depth of bedrock in at least the boring of one hole. The witness, Paul H. Bird, who, at the time of the blasting operations and at the time of the trial, was employed by the State of New York in its Department of Public Works, bureau of soil mechanics, and was employed on the project, testified that the blasting operations had been undertaken simply to check the accuracy of the seismographic method against the actual measurements as determined by the borings. While there were available reports of the borings on some 19 holes, the report on only one of said holes, the one which had reached bedrock, was referred to by the State of New York in connection with the blasting operations under the seismographic method. The recording which was obtained by the seismographic method calculated a depth to bedrock within a couple of feet of that as indicated by the borings, although it was also testified by Mr. Bird that the reports on the blasting *301 had been lost or mislaid prior to the trial and were not available upon the trial. He also testified that the information which was obtained by the seismographic method was merely confirmatory of what the boring operations had already established, and that the whole blasting operation was of an experimental nature, the State of New York being interested in comparing seismographic records as against the known depth as disclosed by the bored hole which had gone down to bedrock.
It is urged by the State of New York that it used only the minimum amount of dynamite required to produce the desired results under the seismographic method. This, it argues, it accomplished by starting at each location of blasting with a small quantity of dynamite, and making successive blasts at such location with increased quantities of dynamite until the desired result was obtained. The record, however, does not establish any reasonable efforts on the part of the State of New York to ascertain the effect of said blasting operations upon the adjoining populous and residential area, the structures thereon, and the people living therein even after warnings that damage was resulting or was reasonably apt to result. But the State of New York insists that the case at bar is within the rule as laid down in Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co. (140 N. Y. 267, supra) which it contends protects it in what it did with reference to blasting. However, in our opinion, an examination of that case shows clearly that the facts here are very different.
It is a well-established rule that no one may make an unreasonable use of his premises to the material injury of his neighbor’s premises, and if he does the latter has a right of action even if he is not driven from his dwelling, provided the enjoyment of life and property is materially lessened. (McCarty v. National Carbonic Gas Co., 189 N. Y. 40, 46.)
“ The law exacts from a person who undertakes to do even a lawful act on his own premises, which may produce injury to his neighbor, the exercise of a degree of care measured by the danger, to prevent or mitigate the injury. The defendant could not conduct the operation of blasting on its own premises, from which injury might be apprehended to the property of his neighbor, without the most cautious regard for his neighbor’s rights. This would be reasonable care only under the circumstances. If it was practicable in a business sense for the defendant to have removed the rock without blasting, although at a somewhat increased cost, the defendant would, we think, in view of the situation, and especially after having been informed of the injury that was being done, have been bound *302 to resort to some other method. * * * The mode of exercising a legal right, where there is a choice of means, may of itself give a cause of action.” (Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co., 140 N. Y. 267, 273-274, supra.)
And referring to the Booth case above mentioned, the court in EMI v. Schneider (13 App. Div. 299, 305-306) says this: “ It was conceded in that case that the work to be done by the railroad company, and which caused the injury to the plaintiff’s house, could be done in no other way then by blasting as the defendants were blasting, and that the defendants, in blasting as they did, were using due care. Upon those concessions the court held that as the defendants were doing only what was necessary to make an excavation upon their own land, and were doing it with proper care, they were not liable; but the chief judge, in delivering the opinion of the court, says, expressly, that if there had been any negligence shown on the part of the defendants, or if it had been practicable in a business sense to do the work in such a way as not to injure the plaintiff’s premises, and the defendants had not done it in that way, the action for damages would lie. The case was evidently decided upon the special facts made to appear upon the trial, and it is undoubtedly an authority for any other case where the same conditions exist. But the rule laid down in that case, while supposed by the court to be necessary for the protection of persons improving their land, ought not to be extended so as to give those persons the privilege of unnecessarily destroying the buildings of their neighbors. It is undoubtedly true, as stated in that case, that one is not to be prevented from improving his own premises because a building has been erected by his neighbor upon an adjoining lot. It is equally true that one who has a building* upon his own premises is not to be punished for having improved his land by permitting* his neighbor, who has not improved his lot, to shake down the building* first built so that another one may be erected alongside of it. Such a rule of law would operate just as much to prevent the improvement of land as the rule which was repudiated in the case of Booth v. R., W. & O. T. R. R. Co. The true rule must be that, while any person is at liberty to improve his own land, yet in the doing of that he must use every practicable means to avoid injury to his neighbor, and he will not be permitted by the use of powerful explosives upon his own land to injure the house of his neighbor. Certainly is this so when, by the use of smaller quantities of the explosives or in some other way, even at a greater expense, he can avoid such a result.”
*303 We have concluded that the State of New York made an unreasonable use of its property under the circumstances herein which constituted a legal wrong for which the claimants have a right to recover; and that the claimants and each of them are free from negligence proximately contributing to or causing the occurrence or occurrences herein described and resulting in the damag’e hereinafter set forth.
The record establishes that as a result of the blasting operations : (a) property at 136 Clermont Street, allegedly owned by claimants, John J. Scully and Emma Scully, his wife, was damaged sustaining cracks in the walls and ceilings of the living room, dining room, bedrooms, bathroom upstairs, powder room downstairs, and in the walls leading to the cellar, the splitting of a beam in the attic, and the falling* of bricks from the chimney on the north side of the house the aggregate damage to said property being the sum of $961.05; (b) property at 152 Melrose Avenue, allegedly owned by claimants, Chester A. and Julia L. La Noue, was damaged sustaining cracks in the walls and ceilings of practically all of rooms in the house, the aggregate damage thereto being the sum of $980; and (c) property at 150 Melrose Avenue, allegedly owned by Ernest W. La Noue, was damaged sustaining cracks in the walls and ceilings of practically all the rooms in the house, the aggregate damage thereto being the sum of $1,020. No evidence was adduced by the State of New York as to the amount of damages alleged to have been sustained by these claimants.
The claims of Chester A. La Noue and Julia L. La Noue, Claim No. 33148, and of Ernest W. La Noue, Claim No. 33149, were duly filed pursuant to an order of this court permitting such filing; and the claim of John J. Scully and Emma Scully, his wife, Claim No. 32408, was also duly filed. None of the foregoing claims has been assigned or presented to any other court or tribunal for audit or determination, and all were finally submitted to this court on the third day of March, 1958.
No determination as to the title of the claimants in and to the property alleged to be owned by them is made by the court, and said question is specifically reserved for the title department under rule 28 of the Eules of the Court of Claims which provides in pertinent part that: £ £ Unless otherwise ordered by the court, or a judge thereof, the judgment in appropriation claims and claims for damages to real property caused by the state as the case may be shall not be entered until attorney-general files in the clerk’s office at Albany his written approval of title to the property appropriated or damaged by the state *304 including Ms direction as to the claimant or claimants in whose name the judgment should be entered.”
Upon the filing with the clerk of this court by the Attorney-General of the State of New York of his written approval of the title of the claimants herein to their respective property damaged by the State of New York, including his direction that they are the claimants in whose name the judgment should be entered, the claimants herein shall be entitled to recover judgment against the State of New York as follows:
John J. Scully and Emma Scully, his wife,
Claim No. 32408, the sum of.................... $ 961.05
Chester A. La Noue and Julia L. La Noue,
Claim No. 33148, the sum of.................... $ 980.00
Ernest W. La Noue, Claim No. 33149, the sum of.... $1,020.00
That should the Attorney-General for any reason fail or refuse to file his written approval and direction as provided for hereinabove, any party affected thereby may apply to this court to reopen the trial herein upon due notice of such application to the others.
The foregoing constitutes our written and signed decision herein. (Civ. Prac. Act, § 440.)
Let separate judgment in each of the above-entitled claims be entered accordingly.