Habold Babb, J.
This case was tried before the court, the jury having been waived, as were formal findings of fact and conclusions of law.
Plaintiff seeks damages for injury to his property allegedly caused by the blasting operations conducted by the defendant Godwin Construction Company, hereafter referred to as Godwin. It is conceded that Godwin conducted blasting operations on a ledge of rock which ran beneath plaintiff’s property and formed part of the foundation of the building erected thereon and extended for a distance of approximately 50 feet onto defendant Senville’s property. Said operations took place from October 13, 1954 to November 10, 1954. There is controversy as to whether the 27 feet of rock immediately adjacent to and east of plaintiff’s property was blasted or removed by other means.
So-called blasting cases are but another illustration frequently found in the law where the principles are relatively simple but the application considerably more difficult.
Blasting is an entirely legitimate operation, one that is frequently necessary to be performed in order that essential work be done. However, the person doing the blasting must make reasonable efforts to ascertain the effect of such blasting operations upon the adjoining property and the structures thereon. Generally, damages due solely to concussion do not warrant a recovery unless it is demonstrated that the work was performed in a negligent or improper manner (Booth v. Rome, Watertown & Ogdenshurg Term. R. R. Co., 140 N. Y. 267 ; Page v. Dempsey, 184 N. Y. 245, 251-252 ; Holland House Co. v. Baird, 169 N. Y. 136, 142 ; 5 Warren, Negligence, p. 293 et seq.).
When the blasting operations are the only means of accomplishing a given purpose for the improvement of one’s land and there is no showing of negligence or employment of improper methods, there can be no liability even though there is damage to the adjoining property owner (Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co., supra). Similarly, one engaged in the construction of a public work is not liable for damage caused by blasting in the absence of a showing of negligence (Shemin v. City of New York, 6 A D 2d 668, 670). But a contrary rule applies to the permanent use of one’s property, such *1062 as in a quarry operation, where the blasting results in damage or diminution of value to the adjoining property (see Dixon v. New York Trap Rock Corp., 293 N. Y. 509 ; Moore v. Newport Quarries, 285 App. Div. 640).
The underlying principle governing these cases is that social progress requires that we not impose unnecessary restraints upon the use of property which promote the development and improvement of communities and public works. Instead, we must strike a compromise between the rights of those seeking to improve their own or public lands and the protection of the abutting landowner who has already improved his property (Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co., supra ; Hill v. Schneider, 13 App. Div. 299, 305-306). To accomplish this end, the court in the Booth case said (pp. 273-274): ‘ ‘ The law exacts from a person who undertakes to do even a lawful act on his own premises, which may produce injury to his neighbor, the exercise of a degree of care measured by the danger, to prevent or mitigate the injury. The defendant could not conduct the operation of blasting on its own premises from which injury might be apprehended to the property of his neighbor, without the most cautious regard for his neighbor’s rights. * * * If it was practicable in a business sense for the defendant to have removed the rock without blasting, although at a somewhat increased cost, the defendant would, we think, in view of the situation, and especially after having been informed of the injury that was being done, have been bound to resort to some other method. * * * The mode of exercising a legal right, where there is a choice of means, may of itself give a cause of action.”
Applying these principles here, I find that Godwin failed to exercise the degree of care required of it under the circumstances. It is uncontroverted that notwithstanding the knowledge that it was causing damage to the plaintiff’s property, it continued its operations in the same manner as it employed before it was so informed, thereby causing continuing and additional damage. There was testimony that an alternative method (i.e., “chipping and feathering”) was available and should have been employed because of the physical circumstance here. Godwin claimed that it did employ a chipping method in the 27-foot area adjacent to plaintiff’s property and introduced a picture dated November 9, 1954, showing this area to be unexcavated. This contention seems to be belied by the uncontroverted testimony that there was heavy blasting conducted on November 9 and 10, 1954 and that the area was excavated to a considerable depth in order to accommodate the construction *1063 of a basement for a supermarket and a foundation for a one-story structure located thereon. (See St. Nicholas Skating & Ice Co. v. Cody, 26 Misc. 764 [App. Term].)
While there was much controversy concerning the damages, 1 find that plaintiff proved that most of his damage was causally related to the blasting. Accordingly, I award him damages in the amount of $6,000 against the defendant Godwin, with interest from November 10, 1954, which seems to be the most readily fixed date to determine when the plaintiff’s loss accrued (see Flamm v. Noble, 296 N. Y. 262 ; A. L. Russell, Inc. v. City of New York, 138 N. Y. S. 2d 455).
The causes of action against the other defendants—the owner and general contractor—are dismissed. The blasting work in and of itself not being inherently dangerous, but the danger instead arising from the manner in which it was performed— no duty devolved upon either the owner or general contractor upon which liability could be based. There was no showing of general supervision or control by either of them (French v. Vix, 2 Misc. 312, affd. 143 N. Y. 90). Ten days’ stay, 30 days to make a case.