Van Voorhis, J. (concurring).
Few rules of law have been more troublesome to formulate or more difficult to apply than those relating to civil liability for damages to neighboring property arising from blasting operations. The established New York doctrine is questioned in the majority opinion in favor of a “ doctrine that a blaster is absolutely liable for any damages he causes, with or without trespass ”, but since this action was tried on the theory of negligence the court does not in this case overrule the doctrine that some negligence was necessary. Although I agree that enough was shown to require this defendant to come forward with evidence showing how this blasting operation was conducted, I do not share in questioning the established rule nor in the view that evidence of serious injury to neighboring property in itself furnishes a basis for expert opinion evidence that the blasting was negligently performed. Such a holding appears to go beyond any prior authoritative decision in this State, and to open jury questions in all cases of this kind on a showing of substantial injury to nearby buildings. Heretofore the rule has been that in the absence of any factual basis for an inference that the blasts were excessive, with or without *500 expert opinion, there is no issue to submit to a jury arising merely from damage to surrounding structures. That rule, I think, should be maintained.
The best formulation of the existing rule is in the leading case of Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co. (140 N. Y. 267) in an opinion by Chief Judge Andrews speaking for the unanimous court. It was there held that in conducting blasting operations the test as to the permissible use of, or action upon, one’s own land is not whether the use causes injury to a neighbor’s property, or that the injury was the natural consequence or that the act was in the nature of a nuisance, but is whether the act or use is a reasonable exercise of the dominion which the owner, by virtue of his ownership, has over his property having regard to all the interests affected, his own and his neighbors, and also having in .view public policy. It was pointed out that the rocky surface of the upper part of Manhattan Island makes blasting necessary in excavation work, and, unless permitted, the value of lots, especially for business uses, would be seriously affected.
It was pointed out (supra, p. 278) that if blasting were to be prohibited in event that damage is done to neighboring property, the consequence would be that the man who has first built a store or warehouse or dwelling on his lot.and has blasted the rock for a basement or cellar would prevent his neighbor from doing the same thing when he comes to build on his lot adjoining. ‘ ‘ Such a rule would enable the first occupant to control the uses of the adjoining property, to the serious injury of the owner, and prevent or tend to prevent the improvement of property * * * The first occupant acquires no right to exclude an adjoining proprietor from the free use of his land, nor to use his own land to the injury of his neighbor subsequently coming there. * * * The fact of proximity imposes an obligation of care, so that one engaged in improving his own lot shall do no unnecessary damage to his neighbor’s dwelling, but it cannot, we think, exclude the former from employing the necessary and usual means to adapt his lot to any lawful use, although the means used may endanger the house of his neighbor.”
The court endeavored to avoid rendering the construction of railroads, highways or private buildings so costly as to be impracticable, while simultaneously protecting the owners of *501 existing buildings insofar as reasonably possible. Chief Judge Andrews’ opinion assumes as a condition that the excavation could not have been done except by the use of explosives. Likewise it was noted that there are acts of various kinds which the owner of land may lawfully do, although it brings annoyance, discomfort or injury to his neighbor, which are damnum absque injuria. Instances are cited such as buildings caused to fall by lawful excavation in adjoining lots, the right of an owner to excavate minerals in a mine, although by so doing it causes the water to collect and be discharged into an adjacent mine on a lower level. Blasting is then analyzed and permitted to a degree that would not be tolerated if it were a permanent procedure, in view of the temporary nature of acts which are resorted to in the course of adapting premises to a lawful use by the construction of buildings, highways or railroads. The erection of an iron building adjacent to a dwelling is cited as something which might be prohibited as a nuisance if the same operations were conducted permanently in a factory, but is permitted on account of the temporary nature of the activity in the construction of a building which will not be a nuisance when completed.
In blasting it was held that although the plaintiff sustained a serious injury, the “ mere proof that the house was damaged by the blasting would not alone sustain the action ” (supra, p. 273; italics supplied). The result would be otherwise ‘ ‘ If it was practicable in a business sense for the defendant to have removed the rock without blasting, although at a somewhat increased cost ” or “ if less powerful blasts might have been used, which, if used, would not have occasioned injury, or would have lessened it ” (pp. 273-274) in which event the omission to use them might have been considered negligence. It appeared in the Booth case that the blasting was the only mode of moving the rock practically available, and that it was done with due care in consequence whereof no cause of action could be maintained.
This followed the rationale of Benner v. Atlantic Dredging Co. (134 N. Y. 156) where liability for damages was disallowed from blasting in Hell Gate. The opinion pointed out (p. 162) that the injuries to plaintiff’s house were.caused by the shaking of the earth or pulsations of the air, or both, without physical invasion of plaintiff’s premises as in Hay v. Cohoes Co. (2 N. Y. 159). This result was reached for the reason that *502 ‘1 One cannot confine the vibration of the earth or air with inclosed limits, and hence it must follow that if in any given case they are rightfully caused, the extention to their ultimate and natural limits cannot be unlawful, and the consequential injury, if any, must be remediless.”
The Booth and Benner cases (supra) have been followed, resulting in the dismissal of blasting claims on the law in French v. Vix (143 N. Y. 90); Holland House Co. v. Baird (169 N. Y. 136); Haefelin v. McDonald (96 App. Div. 213); Shemin v. City of New York (6 A D 2d 668), and Viele v. Mack Paving & Constr. Co. (144 App. Div. 694) as well as in other cases which are cited in the opinions therein. Brown v. Rockefeller Center (affd. without opinion 289 IST. Y. 729) is no exception. The record on appeal in that case shows that there was evidence from which a jury could find a regular pattern of blasts of lesser intensity, . and that the damage was wrought by a single explosion which was of so vastly greater power as in itself to furnish a basis for an inference that the amount of explosive used was excessive. Although the quantity of the charge was not shown, the comparison between this severe explosion and the ordinary explosions adequate to the prosecution of the work was regarded as a substitute for such evidence. That furnished a factual basis for an inference of negligence and provided a foundation for the testimony of the expert witness.
In the case at bar there is no similar testimony. The evidence is that every explosion which occurred was so severe as to cause damage of the nature for which suit is brought. The opinion of the expert witness that the charge was too great lacks probative force in view of the absence of any evidence of the nature which sustained the recovery in.the Brown case (supra), or of the amount of the charge and whether the work could have been accomplished by the use of smaller charges even at somewhat increased cost. An expert witness ’ opinion is without effect if it is speculative being without foundation in facts proved in the record. (Matter of Burris v. Lewis, 2 N Y 2d 323, 327.)
The defendant in this case, however, was subpoenaed to produce records or other evidence showing what actually was done in conducting the blasting which resulted in the injury to plaintiff’s property. A responsible officer or employee of defendant was called to testify to this by plaintiff but denied that any *503 records were kept or that anyone had knowledge upon the subject. It is clear that defendant has sought to escape liability by failing to keep any records or by concealing what actually was done in the conduct of these blasting operations. For that reason, and for that reason only, it seems to me that the defendant should be subject to the consequences if it conceals the evidence of what was done in conducting the blasting. If such evidence had been produced, it would, in my view, have superseded any presumption in plaintiff’s favor, and a question of fact would or would not have been presented depending upon what the evidence showed. In default of any revelation of the facts underlying the cause of this serious damage, I concur in the reinstatement of the judgment in plaintiff’s favor entered upon the verdict of the jury. But I would not go so far as to hold that evidence of injury alone is enough to create a question of fact, with or without expert testimony based thereon, and would vote to affirm except for the concealment by the defendant of the facts concerning the conduct of this blasting operation.
Judges Dye, Fuld, Froessel, Burke and Foster concur with Chief Judge Desmond; Judge Van Voorhis concurs in a separate opinion.
Judgments reversed, etc.