CHARLES BENNER, Respondent, *v.* THE ATLANTIC DREDGING COMPANY, Appellant.

The power to improve rivers and arms of the sea forming the highways of commerce is vested in the United States government, and where congress by statute provides for the exercise of such power in a manner sufficient and complete according to that government's judicial test, it is complete under that of this state.

Where a contractor doing, in appropriate and proper manner, public work required by a contract with said government, which it is authorized to make, and exercising due care in the prosecution thereof, injures private property, he is not liable therefor.

Defendant, while engaged under contract with the United States government, in the work of removing rock, which was an obstruction to navigation in New York harbor, in blasting, injured plaintiff's house; this was 3,000 feet distant from the place of the explosions, and the injuries were caused not by the casting of any material upon the premises but simply by the vibration of the earth or air or both. In an action to recover damages, *held*, that in the absence of any proof of negligence in the manner of doing the work, defendant was not liable; and that a charge to the jury that if the explosions injured plaintiff's house, defendant was liable without regard to the question of negligence, was error.

Defendant while proceeding to give evidence showing that the contract was authorized by the federal government was interrupted by the court with the suggestion that the authority could not be disputed and, thereupon, he desisted from giving further evidence. *Held*, that plaintiff could not present the question as to such authorization upon appeal.

*Hay* v. *Cohoes Co.* (2 N. Y. 159); *Tremain* v. *Same* (Id. 163); *St. Peter* v. *Denison* (58 id. 416); *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 id. 10), distinguished.

*Benner* v. *Atlantic Dredging Co.* (58 Hun, 359), reversed.

(Argued May 4, 1892; decided June 7, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 8, 1890, which affirmed a judgment in favor of plaintiff, entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages caused to a house belonging to the plaintiff at Astoria, N. Y., by blasting done by the defendant in the waters of Hell Gate between January 5, 1887, and April 12, 1888. The complaint alleged that the defendant did " wrongfully and unlawfully so discharge such blasts  *  *  *  as to shake, jar, damage and injure this plaintiff's said dwelling-house  *  *  *  and to create a nuisance and did so maintain such nuisance and so negligently and carelessly blast such rock  *  *  *  that plaintiff's said dwelling was solely thereby shaken and injured," etc.

The defendant pleaded, among other defenses, that such blasting " was done and performed under and by virtue of the authority of the United States and under the direction of the officer of the Engineer Corps of the United States Army in charge of said work; that such operations were a public necessity and requirement and were duly performed in a lawful and careful manner and without any default, negligence or carelessness upon the part of the defendant."

Evidence was given upon the trial tending to show that the plaintiff's house, which had been previously injured by explosions, was placed in good repair in November, 1886, and that afterwards, through the blasting operations of the defendant, the foundations, walls and ceilings were cracked and injured as alleged in the complaint.

The blasting was done by defendant under a contract dated November 16, 1886, between " Lieut.-Col. Walter McFarland, Corps of Engineers U. S. Army of the first part and the

Atlantic Dredging Co. * * * of the second part." It witnessed that "the said Lieut.-Col. Walter McFarland for and in behalf of the United States of America and the said Atlantic Dredging Co." had mutually agreed, etc.

The subject of the contract was the removal of 50,000 tons of broken rock from Middle Reef, or Flood Rock, Hell Gate, New York, at a certain price per ton, subject to inspection " by an inspector appointed on the part of the government." The specifications provide that " the contractor will do such surface blasting as may be necessary at his own expense." The contract was signed " Walter McFarland, Lieut.-Col. of Engineers (L. S.) " and by the defendant through its president and was " approved Nov. 29, 1886, by H. Droam, Brig. Gen., Chief of Engineers." Other facts are stated in the opinion.

*N. C. Moak* for appellant.

*Edward C. Perkins* for respondent.

LANDON, J. The plaintiff contends that the defendant did not prove that it was authorized by the United States to blast the rocks in Hell Gate.

The defendant had read in evidence without objection the contract under which it prosecuted the work of removing 50,000 tons of broken rock from Hell Gate. This contract was made by Lieut.-Col. Walter McFarland, Corps of Engineers U. S. Army, as party of the first part, and recited that he made it " for and in behalf of the U. S. of America, * * * subject to the approval of the Chief of Engineers, U. S. A.," and was approved by that officer. The plaintiff also read a stipulation of the defendant's attorney that plaintiff might read in evidence the whole or part of the records of the war department concerning the contract by the defendant to do the work in the Hell Gate improvement, and the work done by the defendant under the contract. The plaintiff did prove by Lieutenant Derby, an officer in the U. S. government employ, that he was superintendent of the improvement, and as such

kept a record of the progress of the work. Plaintiff read
from this record under the stipulation matters relating to the
explosions. Plaintiff also read in evidence a letter of Lieu-
tenant Derby to the defendant respecting the explosions. The
plaintiff thus attempted to convict the defendant of improp-
erly conducting the explosions, by the records of the war
department. The effort does not appear to have been success-
ful. While the defendant had possession of the case, its
counsel was proceeding to give further evidence of the fact
that its contract was with the U. S. when the trial court inter-
rupted him, and a colloquy ensued between the court and
defendant's counsel, in which the court said : " There is
nobody who says it (the contract) was not authorized." * * *
" These plaintiffs cannot question your right to be there,
because you proved the contract which took you there."
* * * " Col. McFarland was in the habit of making con-
tracts for the government. I presume the government recog-
nized the contracts and paid under them." Defendant's
counsel thereupon desisted from presenting further evidence
respecting the proper authorization by the U. S. There is no
suggestion in the record that the plaintiff did not acquiesce in
the views presented by the court. The court in charging the
jury, after stating that large masses of broken rock were left in
the bottom of East river as the result of a great explosion con-
ducted by the U. S. government in 1885, and that the rocks were
dangerous to navigation, added : " The Atlantic Dredging Co.
entered into a contract with the general government for the
destruction and removal of these fragments. * *. * Under
that contract they went upon the East river and commenced
the destruction of these fragments which were scattered about
the bottom of the river. The defendants were thus justified
in going there."

Upon these facts this court cannot entertain the suggestion
that the defendant must fail because it did not show that in
removing these masses of rock it was acting under the authority
of the U. S. Evidence had already been given tending to
prove that it acted under such authority. The stipulation and

evidence adduced by the plaintiff implied that the fact was so. The defendant was giving further evidence to the same end, and practically was not allowed to give any more; the question was put to rest by the statement of the court to the effect that further proof was unnecessary. The defendant had the right to rely upon the direction given by the court. (*Flora v. Carbean*, 38 N. Y. 111.) True, the record does not present the plaintiff's exceptions. Why not? Because no exception taken by the plaintiff can aid him. He must defend his judgment against the attack of the defendant. The defendant can say, my authority from the U. S. was conceded, but I was beaten because the court held that that could not aid me. The plaintiff is not harmed, for if a new trial should be granted, the plaintiff can contest the question of authority. If a new trial should be refused because the authority was not sufficiently shown, the defendant will be beaten because denied a day in court upon the question of authority.

That the defendant's contract was with the U. S. cannot be questioned upon this appeal. But it is said the authority of the U. S. to make the contract must be shown. We know that congress has exclusive power to regulate commerce, both foreign and interstate, and that the improvement of rivers and arms of the sea forming the highways of such commerce is vested in the U. S. (*Wisconsin* v. *Duluth*, 96 U. S. 379.) Various acts of congress — of which we take judicial notice, since they are the supreme law of the land — appropriated moneys for the improvement of Hell Gate and authorized it. (22 U. S. Stat. 58, 191; 23 id. 133, 138; 24 id. 310, 318.) Other statutes bear upon the subject. The U. S. is a sovereign nation with full power over the subject-matter, and may by statute provide for the exercise of that power in such legislative meagerness of form as suits itself. If its attempted exercise of power is complete according to its own judicial test, it is complete under ours. The case last cited is an exposition of the power of the U. S. under similar statutes, and we repose upon its authority.

It must be held that the U. S. was competently authorized

to make the contract, and in making it kept within its powers both as to the subject-matter of the contract and the manner in which it engaged and authorized the defendant to perform it.

The learned trial court charged the jury that if the explosions conducted by the defendant injured the plaintiff's house the defendant was liable, irrespective of the question of defendant's negligence; that the question of negligence was not in the case; that if the business could not be conducted without producing such injury it must cease. We think this was erroneous. It is entirely clear that the defendant had all the authority of the U. S. to use all the means contemplated by the contract for the removal of these rocks, provided always that he used them carefully; care being a proper regard both to the efficient prosecution of the work and the rights of third persons; the absence of such care being negligence.

The instruction of the trial judge eliminates negligence and assumes proper care. Thus the defendant had the authority of the U. S. to do the work carefully, and did it within such authority.

It being lawful for the sovereign to exercise its lawful power, it must follow that whatever results from its proper exercise is not unlawful, and if any injury, direct or consequential, results to the individual, he is remediless, except so far as the sovereign gives him a remedy.

The government has provided for such direct injuries as amount to a taking of private property for public use, by the constitutional provision that it must not be done without full compensation. If the present were such a case it would seem that the plaintiff's remedy would be to make the proper application to the government. The defendant having done no more than it was fully authorized to do, and which its duty to the government under the contract required it to do, would be blameless, and the government liable because of its constitutional obligation.

But this is not a case of taking private property, or of direct, but is of consequential injury. The plaintiff's house was 3,000

feet distant from the place of the explosions. The injuries to it were caused by the shaking of the earth or pulsations of the air, or both, resulting from the explosion. There was no physical invasion of the plaintiff's premises by casting stones or earth or other substances upon them, as in *Hay* v. *Cohoes Co.* (2 N. Y. 159); *Tremain* v. *Cohoes Co.* (Id. 163); *St. Peter* v. *Denison* (58 id. 416), and hence, no going outside of the authority actually conferred and conferrable as in those cases. Nor was the work here prosecuted for the benefit of private ownership aided by the public grant of the privilege, as in *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 N. Y. 10), and hence, the rules applicable to public grants of privileges to private parties or corporations have no force. This work was done under the government for the government, and in no sense to the detriment of public rights or to the advantage of the defendant's private ownership. The principles assumed in the case last cited amply support the defendant's position.

One cannot confine the vibration of the earth or air within inclosed limits, and hence it must follow that if in any given case they are rightfully caused, their extension to their ultimate and natural limits cannot be unlawful, and the consequential injury, if any, must be remediless.

The defendant had the authority of the government and kept within it, and, therefore, is not liable. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id. 42; *Marvin* v. *Brewster Iron Co.*, 55 id. 538; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Atwater* v. *Village of Canandaigua*, 124 id. 602; *Transportation Co.* v. *Chicago*, 99 U. S. 635; Wood on Nuisance, § 752, quoted with approval in *Seifert* v. *City of Brooklyn*, 101 N. Y. 145.)

Criticism with respect to the extent to which private and municipal corporations have been permitted to expand the authority given them by the government to justify their invasion of private rights (*Coggswell* v. *N. Y., N. H. & H. R. R. Co., supra*), may be pertinent when such parties attempt the expansion for such purposes, but it can have no pertinency to a case where the government itself seeks, by appropriate

means plainly adapted to the end, to accomplish for the public benefit any of the objects confided to its jurisdiction. (*M' Culloch* v. *Maryland*, 4 Wheat. 316–421.)

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except VANN, J., dissenting.

Judgment reversed.