CORNELIUS H. SLINGERLAND, Appellant, *v.* THE INTERNATIONAL CONTRACTING COMPANY, Respondent.

1. RIPARIAN RIGHTS — WHEN SUBJECT TO APPROPRIATION IN AID OF PUBLIC IMPROVEMENT OF NAVIGABLE RIVER. Whatever the rights of the owner of lands bordering upon, or within the waters of, a navigable river, they must yield when the powers of the Federal or State government are called into exercise for a general public benefit in the improvement of navigation.

2. DAMAGES INCIDENTAL TO IMPROVEMENT NOT RECOVERABLE. The owner of lands bordering upon the Hudson river, on which no improvements in the way of piers, wharves or other commercial structures had been made, to whom a small tract of land under water in front of part of his uplands had been granted by the state, cannot maintain an action against a contractor performing work for and under the authority of the United States government in dredging out the channel of the river, who, by express permission of the state authorities and with the sanction of the United States officer having supervision of the work, deposited materials

dredged from the channel upon State land under waters of the river behind a dike and bulkhead, previously erected by the United States in front of a part of the uplands of such owner and adjacent to his tract of land under water, for damages incidentally caused to such land under water by sand washing through the bulkhead, or for the impairment of rights of fishing in the river or taking ice therefrom, since as a riparian owner merely he has no exclusive right of fishery or of taking ice.

3. IMPAIRMENT OF RIGHT OF ACCESS TO NAVIGABLE PART OF RIVER — WHEN DAMAGES THEREFOR ARE NOMINAL. Where there is no evidence of any actual damages suffered by such riparian owner by being deprived of his right of access to and from the navigable waters of the river, separated, or separable, from that relating to the loss of fishery and ice rights, it is impossible, even upon the assumption that the right of access is impaired, to assess any damages therefor, and the direction of a verdict for nominal damages is not erroneous.

*Slingerland* v. *International Contracting Co.*, 43 App. Div. 215, affirmed.

(Argued October 23, 1901; decided December 10, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 12, 1899, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Jacob L. Ten Eyck, G. Herbert Cone* and *H. A. Peckham* for appellant. The disposal of the dredged material complained of was not work undertaken by the government. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Wylde* v. *N. R. R. Co.*, 53 N. Y. 156; *U. S.* v. *Fisher*, 2 Cranch, 358; *Boynton* v. *L. G. L. Co.*, 124 Mass. 197; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Morton* v. *Mayor, etc.*, 140 N. Y. 207; *Hill* v. *Mayor, etc.*, 139 N. Y. 495; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18; *Buccleuch* v. *Metropolitan Bd. of Works*, L. R. [5 H. L.] 418; *N. S. Ry. Co.* v. *Pion*, L. R. [14 App. Cas.] 612.) The alleged acts of the United States engineer and of the state land commissioners cannot avail the defendant. (*Davis* v. *Mason*, 4 Pick. 156; *Huckstein* v. *K., etc., Co.*, 139 Penn. St. 201; *W. W. Works* v. *Moore*, 61 Vt. 230; 9 Am. & Eng. Ency. of

Law [2d ed.] 899; *People ex rel.* v. *Colgate,* 67 N. Y. 515; *Rumsey* v. *N. Y. & N. E. R. R. Co.,* 114 N. Y. 423; *Story* v. *N. Y. El. R. R. Co.,* 90 N. Y. 122; *Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75; *People* v. *Mauran,* 5 Den. 389; *People* v. *Page,* 39 App. Div. 110.) The plaintiff proved an exclusive right of fishery in the waters in front of his property. (*Town of Southampton* v. *M. B. O. Co.,* 116 N. Y. 1; *Trustees of Brookhaven* v. *Strong,* 60 N. Y. 56; *McRoberts* v. *Bergman,* 132 N. Y. 73; Coke's Litt. 122a and note; *Marshall* v. *U. S. N. Co.,* 3 B. & S. 732; *Malcomson* v. *O'Dea,* 10 H. L. Cas. 593; *Holford* v. *Bailey,* L. R. [8 Q. B.] 1000; *Cobb* v. *Davenport,* 32 N. J. L. 369; Angell on Watercourses [7th ed.], 76; *Atty.-Gen.* v. *Emerson,* L. R. [App. Cas. 1891] 649; 3 Kent's Comm. 411; *Robins* v. *Ackerly,* 91 N. Y. 98; *Hand* v. *Newton,* 92 N. Y. 88.) Plaintiff owned the right to gather ice. (*Payne* v. *Woods,* 108 Mass. 160; *Ham* v. *Salem,* 100 Mass. 350; *State* v. *Pottmyer,* 33 Ind. 402; *W. I. Co.* v. *Shortall,* 101 Ill. 46; *Myer* v. *Whittaker,* 55 How. Pr. 376; *Loran* v. *Bensen,* 8 Mich. 18; *M. R. W. Co.* v. *Smith,* 34 Conn. 462; *Brown* v. *Bowen,* 30 N. Y. 519; *McFarlane* v. *Essex Co.,* 10 Cush. 309.) Irrespective of the question of exclusive ownership of the fishery and ice rights, the plaintiff proved damages to his inheritance or freehold by reason of the destruction of the riparian rights appurtenant thereto, for which he was entitled to compensation. (*Matter of Gilroy,* 85 Hun, 424; 1 Lewis on Em. Domain [2d ed.], § 235; *City of Syracuse* v. *Stacey,* 45 App. Div. 249; *Boom Co.* v. *Patterson,* 98 U. S. 403; *Matter of N. Y., L. & W. Ry. Co.,* 27 Hun, 116; *Benham* v. *Dunbar,* 103 Mass. 368; *Payne* v. *Woods,* 108 Mass. 160; *Ham* v. *Salem,* 100 Mass. 350; *Kernochan* v. *N. Y. E. R. R. Co.,* 128 N. Y. 559; *Ex parte Jennings,* 6 Cow. 543.) The court erred in its rulings on the measure of damages. (*Stowers* v. *Gilbert,* 156 N. Y. 600; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 N. Y. 98; *Pappenheim* v. *Met. El. Ry. Co.,* 128 N. Y. 436; *Pond* v. *Met. El. Ry. Co.,* 112 N. Y. 186; *Plate* v. *N. Y. C. R. R. Co.,* 37 N. Y. 172; *Mahon* v. *N.*

Y. C. R. R. Co., 24 N. Y. 658; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Tallman* v. *Met. El. R. R. Co.*, 121 N. Y. 119; *Roberts* v. *N. Y. El. R. R. Co.*, 128 N. Y. 455.) The trial court erred in not permitting the jury to pass upon the question of punitive damages. (*Day* v. *Woodworth*, 13 How. [U. S.] 363; *Voltz* v. *Blackmar*, 64 N. Y. 440; *Etchberry* v. *Levielle*, 2 Hilt. 40; 5 Am. & Eng. Ency. of Law, 22; 1 Suth. on Dam. 720; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; 1 Sedg. on Dam. [8th ed.] § 373; *M. P. Ry. Co.* v. *Humes*, 115 U. S. 512; *M. & S. P. Ry. Co.* v. *Arms*, 91 U. S. 489.)

*J. Newton Fiero* for respondent. The act of defendant in placing dredged material behind the dock upon land owned by the state of New York was done under the paramount power of Congress for the purpose of improving navigation, and with the acquiescence and under the authority of the state, and the plaintiff cannot recover damages therefor. (*Benner* v. *A. D. Co.*, 134 N. Y. 156; *Wisconsin* v. *Duluth*, 96 U. S. 379; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Gilman* v. *Philadelphia*, 3 Wall. 713; *So. Carolina* v. *Georgia*, 93 U. S. 4; *Mobile* v. *Kimball*, 102 U. S. 691; *M. N. Co.* v. *U. S.*, 148 U. S. 335; *Escanava Co.* v. *Chicago*, 107 U. S. 682.) The acts complained of were done under the direction of the government in improving and changing the channel of the Hudson river, and the deposit of materials as made was authorized by the engineer in charge. (*Wisconsin* v. *Duluth*, 96 U. S. 379.) The state owns the land under water where the dredged material was deposited, and the authority granted by the land board is a full and complete answer to the claim on the part of the plaintiff for damages. (*Canal Appraisers* v. *People*, 17 Wend. 571; *People* v. *Canal Appraisers*, 33 N. Y. 461; *Smith* v. *City of Rochester*, 92 N. Y. 482; *Roberts* v. *Baumgarten*, 110 N. Y. 380; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 274; *Kerr* v. *W. S. R. R. Co.*, 127 N. Y. 269; *Willson* v. *B. B. C. M. Co.*, 2 Pet. 245; *Gillman* v. *Philadelphia*, 3 Wall.

713; *Sage* v. *Mayor, etc.*, 154 N. Y. 61.) The plaintiff has no title to any lands below high-water mark at any point in front of his property, and, therefore, no exclusive right of fishery in connection therewith. ( *Wheeler* v. *Spinola*, 54 N. Y. 377; *Roberts* v. *Baumgarten*, 110 N. Y. 380; *De Lancey* v. *Piepgras*, 138 N. Y. 26; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Hooker* v. *Cummings*, 20 Johns. 91; *Trustees Brookhaven* v. *Strong*, 60 N. Y. 56; *Gould* v. *James*, 6 Cow. 369; *K. I. Co.* v. *Shultz*, 116 N. Y. 382.) Plaintiff has no right to recover for damages to ice privileges; as he has no exclusive privileges of that character no legal right is invaded. (*K. I. Co.* v. *Shultz*, 41 Hun, 458; 116 N. Y. 382; *Myer* v. *Whitaker*, 55 How. Pr. 376; *Swan* v. *Goff*, 39 App. Div. 95.) The plaintiff did not show any actual legal damage sustained by him, and the court was justified in holding that he was not entitled to recover compensatory damages, because he proved none. (*Hedges* v. *W. S. R. R. Co.*, 150 N. Y. 150.)

GRAY, J. The plaintiff brought this action to recover damages against the defendant for an alleged trespass in unlawfully dumping materials, which were dredged from the channel of the Hudson river, into the waters of the river adjacent to his lands. He claims that, thereby, his right of access to and from the navigable part of the river and his rights to take ice and of fishing have been impaired, or destroyed. He was the owner and occupant of certain lands situated on the west shore of the Hudson river, in the town of Coeymans and county of Albany, and, by grant from the state, he had, also, acquired a tract of some two acres of land under the waters of the river, adjacent to the southerly part of his upland. In 1889, the United States government built a dike in the river, parallel with its western bank and at a distance of some 470 feet therefrom; the southerly end of which was about opposite to a point in the center of the plaintiff's shore line. Subsequently, a bulkhead, or cross-dam, was constructed from the southerly end of this dike to the shore, and within the space thus inclosed, to the north of the bulkhead, the

materials, which were being dredged in the process of improving the channel of the river, were deposited by the defendant, then a contractor for the work. The lands under water theretofore acquired by grant from the state were south of this bulkhead; but some of the materials thus deposited by the contractor had washed through the bulkhead and had, to some extent, affected the depth of water over the plaintiff's grant. The plaintiff's uplands were used for farming purposes and no improvements had been made upon the shore. His complaint, however, is that he had been accustomed to fish in the river and to take ice therefrom; that those were exclusive and valuable rights, which had been destroyed by the contractor's acts, and that, by reason of the water becoming shallower, his access to the navigable part of the river by boats had been seriously impaired, or destroyed. In addition to a denial of the exclusive rights, which the plaintiff claimed, of fishing and of ice taking in the river waters, the defense made to this action was that the materials had been deposited at this point pursuant to authority obtained from the commissioners of the land office of the state of New York, and in the performance of a contract entered into with the United States government by Edwards, Howlett & Thompson for the purpose of improving the navigation of the Hudson river between the Troy state dam and Coxsackie, and of a further contract relating to that work between that firm and the respondent. This latter ground of defense to the action, if made out by the proofs, is effective and, therefore, will be first considered. Prior to 1887, the improvement of the Hudson river, by widening and deepening the channel, was being carried on by the state; but, after that year, the United States government took up the work of dredging the river and of constructing and repairing dikes. Chapter 158, of the Federal Statutes of 1892, made an appropriation for improving the Hudson river, "so as to provide for a channel 12 feet deep and 400 feet wide from Coxsackie to the foot of Broadway, Troy," etc., and provided for the making of contracts by the secretary of war "as may be necessary to carry out a plan, recommended by the Board

of Engineers of the United States army   *   *   *   for the
improvements of the Hudson River;" to be paid for by
appropriations from time to time.   By section 6, of chapter
907, of the Federal Statutes of 1890, it had been provided
that the prohibition therein against depositing materials in
any of the navigable rivers, or waters, of the United States
should not be construed to extend to "the depositing of any
material, excavated for the improvement of navigable waters,
into such places and in such manner as may be deemed by
the United States officer supervising such improvement most
judicious and practicable and for the best interests of such
improvements, or   *   *   *   under a permit from the secre-
tary of war."   The contract for improving the Hudson river
navigation, awarded to Edwards, Howlett & Thompson, in
December, 1892, was not produced upon the trial; but a
contract between Edwards, Howlett & Thompson and this
defendant, the International Contracting Company, in January,
1893, was proved.   It recited the making of a contract with
Edwards, Howlett & Thompson, upon the acceptance of their
proposals by the secretary of war, and that it was proposed to
sublet the contract by employing the defendant to execute
the same for them, by performing the work required, and
it then provided that the defendant should perform and
execute all the agreements and stipulations of the contract
with the government.   Upon the plaintiff's case, it, also,
appeared by the testimony of the United States engineering
officer, having the local supervision of this part of the
Hudson river, that Edwards, Howlett & Thompson were the
contractors for dredging the Hudson river.   In July, 1893,
an application was made to the engineer in charge of the
improvement for permission to "dump materials dredged
from the channel, under our contract with the United States
Government for Hudson River Improvement, behind the
following dikes" and mentioned the one in question, opposite
the plaintiff's lands.   The application, being forwarded by the
engineer in charge to the engineer office of the United States
army, was granted in this form, viz.: "that this office offers

no objection to the proposed disposition of the material; it being understood, however, that the material will be placed behind secure bulkheads where it cannot be washed back into the channel by current or freshet action." The form of action upon the application is not so singular, if we have in mind the prohibition of the Federal statute of 1890 against the deposit of materials excavated, unless approved by the United States officer supervising the improvement. The supreme control of the river, for navigation purposes, was in the United States government and the absence of any objection on the part of the United States engineer left the contractor free to deposit his dredgings in the part of the river specified, as against the government. But the contractor went further and the permission of the state authorities was obtained, in December, 1893, through an application to the commissioners of the land office of the state. The resolution passed by that body recited that Edwards, Howlett & Thompson, as contractors for carrying out the Hudson river improvement, had presented an application to the board; that the state engineer and surveyor had reported to the board that this was a public improvement, carried on in the interest of commerce and navigation by the United States government, etc., and it approved " the application for depositing material dredged from the channel" behind the stone dike in question; with provisos that it should be placed behind secure bulkheads, where it could not be washed back into the channel; that the consent had reference only to the state lands under water and that private rights of property, if any, of every nature and description shall not be taken away, or impaired, without due process of law. I should say that it was quite clear from the evidence upon the subject, and, indeed, conceded upon the plaintiff's case, that the contractor was performing a work under the authority of the United States government and, therefore, that the depositing of the materials dredged from the river behind the bulkhead and upon the lands of the state, being by express permission of the state authorities and with the sanction of the United states officer, having supervision

of the work, could entail upon the defendant no liability
for results to plaintiff's riparian rights, which were, neces-
sarily, incidental to the execution of the work.   The doctrine
of the non-liability of the agents of the Federal govern-
ment, in the execution of a work authorized by Congress
and within the powers of government, should be no longer
open to question, under the decisions of *Benner* v. *Atlantic
Dredging Company*, in this court, (134 N. Y. 156), and
of *Scranton* v. *Wheeler*, in the United States Supreme
Court (179 U. S. 141).   *Benner* v. *Atlantic Dredging Com-
pany* was a case where damages were sought to be recov-
ered by the plaintiff for injuries occasioned to his dwelling
house by blasting operations in the waters of the East river,
at Hell Gate, which were being conducted by the defendant
under a contract with the United States government.   It was
held, in substance, upon a consideration of the cases in this
court and in the United States Supreme Court, that the
defendant's contract being with the United States govern-
ment, the latter was exercising a lawful power in prosecuting
a public work of improvement and that whatever resulted
from its proper exercise could not be unlawful.   Thus, if any
injury, direct or consequential, resulted to the individual, he
is remediless, in the absence of any remedy given by the gov-
ernment.   It was said " that the defendant had the authority
of the government and kept within it, and, therefore, is not
liable."   *Scranton* v. *Wheeler* is a very recent decision of the
United States Supreme Court and contains an elaborate dis-
cussion of the question.   It was a case where the United
States government had constructed a pier across the entire
front of the plaintiff's land, and within his riparian ownership
to the middle of the stream in question, which excluded him
from access to its navigable part.   The question for determi-
nation was stated to be, whether the prohibition of the Con-
stitution of the United States against the taking of private
property for public use, without just compensation, had any
application to the case of an owner of land, bordering on a
public navigable river, whose access from his land to naviga-

bility is permanently lost, by reason of the construction of a pier for the purpose of improving the navigation of such river. The cases were reviewed, including those decided in this court, and the conclusion was reached that the riparian owner had no right to be compensated for the loss of his right of access to navigability; inasmuch as he had acquired his title subject to the rights which the public had in the navigation of the river.  It was held that his title was subordinate to such use of the submerged lands in front of his upland and of the waters flowing over them, as may be consistent with, or demanded by, the public right of navigation.  His right of access was subject to the contingency that it might become valueless, in consequence of the erection, under competent authority, of structures upon the submerged lands for the improvement of navigation.  It was said that " the agents designated to perform the work ordered, or authorized, by Congress had the right to proceed in all proper ways, without taking into account the injury that might possibly, or indirectly, result from such work to the right of access by riparian owners to navigability."  The principle underlying these decisions is found in the power which is vested in Congress by the Federal Constitution to regulate commerce with foreign nations and among the several states. Such a power was, at an early day, the subject of construction and was held to include the power " to prescribe the rule by which commerce is to be governed ; " a rule which was without other than constitutional limitations and which comprehended navigation within the limits of every state in the Union, so far as connected with foreign, or interstate, commerce.  (*Gibbons* v. *Ogden*, 9 Wheat. 196.)

In *Sage* v. *Mayor, etc., of N. Y.*, (154 N. Y. 61), this court considered a phase of the question of the rights of a riparian owner, in their relation to the paramount power of the state, and the view was taken that he has no rights which do not yield to commercial necessities and the public right to improve navigation.  The opinion states the rule in this state, which is established by the authorities, as it is given in

Gerard's "Titles to Real Estate:" "It has been established in this state by judicial decision that the legislature of the state has an inherent right to control and regulate the navigable waters within the state. \* \* \* The individual right of the riparian owner was considered \* \* \* as subject to the right of the state to abrogate, or destroy, it at pleasure, by a construction, or filling in, beyond his outer line and this, too, without compensation made." (p. 853.)

The doctrine must be regarded as settled that, whatever the rights of the owner of lands bordering upon, or within the waters of, a navigable river, they must yield when the powers of government are called into exercise for a general public benefit in the improvement of navigation, and this is, of course, true whether the power be exercised by the Federal, or the State, government. Loss may result to the individual; but he is remediless at law. He can have no private rights in the river, which are exempt from the requirements of a public, or governmental, necessity. In this case, the plaintiff had not gained, nor acquired, any further rights than what appertained to him as the riparian owner; for he had constructed no improvements upon the shore, in the way of piers, wharves, or other commercial structures. In so far as his lands under water were concerned, there was no appropriation of them and they were only incidentally affected, as the result of sand washing through the bulkhead. The gravamen of the complaint is the unlawfulness of the contractor's acts and that must be determined by a consideration of the authorization which he had. The main work was being done under Federal authority. The state, as owner of the title to the bed of the river, (*Roberts* v. *Baumgarten*, 110 N. Y. 380; *Smith* v. *City of Rochester*, 92 ib. 482), had granted the right to deposit the dredged materials upon its lands under water; which it had the unquestionable power to do for the resultant benefit of the public, in the improvement of river navigation. The state and Federal authorities were working in accord and I cannot doubt that the plaintiff's rights were subordinate and subject to the appropriation by the state of the

bed of the river in front of his upland, in aid of the public improvement of the river; as they were to the acts of the United States authorities in executing the provisions of the Federal law.   Neither the *Rumsey Case*, (133 N. Y. 79), nor the *Saunders Case*, (144 N. Y. 75), is applicable to the question before us.   They were actions against a railroad corporation, which was seeking private ends, and the question of the governmental right to improve river navigation, to the incidental prejudice of the riparian owner, was not involved.

If improvements, authorized by, or under, state laws, had been taken, or destroyed, a different question would be presented, as to the right to be compensated; but this is no such case.   Whatever damage the plaintiff has sustained relates to the assertion on his part of an unauthorized invasion of his rights over and in the river waters.   It is contended, in effect, that, if the work of improving river navigation is authorized by the general government, the defense, that the dumping of the dredgings was within that authority, is not made out.   It is claimed that the contract with the government was not produced to prove that the defendant kept within its authority; or to negative a presumption that it contained stipulations beneficial to the plaintiff and which made the contractor responsible to plaintiff, if damaged by the deprivation of any of his rights.   Upon this alleged defect in the proofs, in connection with the proviso in the license granted by the state commissioners of the land office, that private rights of property shall not be impaired, can it be said that the plaintiff has a remedy against the defendant for damage sustained?   I am inclined to the opinion that he has not and that, whatever the prejudicial results to him, in the natural enjoyment of his riparian ownership, they are clearly such as were incidental to a lawful work, carried on under governmental authority, and that, with the exception to the right of access to the navigable part of the river, the rights asserted to have been impaired gave rise to no cause of action against the contractor. They consisted in claims to exclusive rights of taking fish and ice from the river waters in front of his property and the full-

ness of the discussion upon this subject in the opinion of Mr. Justice LANDON, at the Appellate Division, justifies but a brief expression of our views.

We agree with the opinion that, by the terms of the grants, upon which the plaintiff's claim, in part, rests, the description includes no part of the river and that the grant of the "fishing" related to the fishing in the waters "within the limits and bounds," as it is termed, of the grant. Nor can it be said that there was any exclusive right by prescription. Under his title, it cannot lie in the terms of the ancient grant. A title by prescription presumes a grant, and it must be one which was anterior to the succession by the state to the rights of the crown. The state could not grant an exclusive right and, if there was no authority in law for such a grant, it will not be implied, as the basis of a right by prescription. (*Knickerbocker Ice Co.* v. *Shultz*, 116 N. Y. 382.) He could gain no exclusive title by continuous, or adverse, user; for the river was common to all. The title of the state was in trust for the People and all rights exercised in the waters of the river were enjoyed in common. Fishing in navigable rivers, or in arms of the sea, is presumptively common to the public, (*Hooker* v. *Cummings*, 20 Johns. 101), and the presumption militates, necessarily, against any title having been acquired, exclusive as to the state and the public.

As to the plaintiff's claim to an exclusive right of taking the ice from the river, in front of his lands, it suffices to say that there is no foundation in the law for it. The Hudson river being a navigable stream, the ice formed therein belongs to the first appropriator and the right to take it is one owned in common with the public; except as an exclusive privilege is conferred by the statute upon the owners, or lessees, of ice houses on the river of cutting and gathering the ice formed in the waters adjacent to their lands, upon compliance with certain conditions. (Chap. 953, Laws of 1895; chap. 388, Laws of 1879.) Impliedly, the statutory enactment excludes the idea of there being any normal, and exclusive, right to the river ice. As the plaintiff had no ice house, he was in no

position to assert any claim to an exclusive privilege, or right, to the ice which formed in the river adjacent to his lands.

With respect to any damage sustained to the plaintiff's right of access to and from the navigable part of the river, the evidence fails to disclose its amount. We may assume that his right, in that respect, was impaired; but the evidence of the particular damage suffered was not separated, nor separable, from that relating to the loss of fishery and ice rights. Plaintiff proved no actual damages suffered by being deprived of his right of access and, in the absence of any evidence as to the amount of his loss, it was impossible to assess it. The trial court, in instructing the jury to return a verdict for nominal damages, committed no error.

Prospective damages, or those which, in a different situation as to improvements, might have been suffered, as the result of the defendant's acts, were not recoverable. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79.)

The judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT and CULLEN, JJ., concur; LANDON, J., not sitting; WERNER, J., dissenting.

Judgment affirmed.