Hopstadter, J.
This case poses the challenging question whether an infant may maintain an action for damages for breach of the implied warranty of fitness for consumption where food was purchased by her parent.
The defendants conduct a neighborhood store at which the father of the infant plaintiff, Sheila, then 15 years old, on his way home at the end of his day’s work purchased a can of brand-name salmon. The salmon was served at the evening meal on the day of its purchase to the family, consisting of Sheila and her parents. Concealed and imbedded in a piece of this salmon into which Sheila bit, was a metal fish tag shaped like a pin, to which were attached two small plastic discs; as a result she suffered a fracture of her right central upper incisor, with accompanying infection of the cheek. Sheila has recovered damages for her injuries and her father for loss of services and medical expenses.
Both causes of action alleged a breach of the defendants’ implied warranty that the salmon was wholesome and fit for consumption. The defendants rested on the plaintiffs’ proof. They relied on the claim of lack of privity to bar recovery.
We affirm the judgment. In our view, the father’s purchase of the can of salmon to be eaten not by himself alone, but by the members of his household, including the plaintiff Sheila as well,, was clearly one made by him for the entire household. To view the situation otherwise is to blind oneself to its realties. *885 It is not without interest in this case, though we need not rest our decision on the incident, that the salmon was bought at Sheila’s own request, because she preferred it to tuna fish which her mother had originally intended to serve at the evening meal.
A legal principle must have the “ transcendent dimension ” of reality to retain validity. As the rule of domestic conduct must be invested with the authority of duty as well as of affection, that of social governance-jurisprudence — must afford protection as well as have warrant in precedent if it is to possess vitality. It must be effectual “ to see the hedge keep the cow and the latch keep the door,” in the homely but expressive idiom of an earlier age (Alfred Duggan: “ My Life for My Sheep —A Biography of St. Thomas a Becket,” pp. 104,171).
A doctrine is conceived in necessity. It is supported by theory. The considerations which gave it birth cease; but it continues its sway. As its inutility for living purposes becomes apparent, it is gradually fragmentized by decisional law — and its segments discarded. Finally, it disappears altogether — as in the ‘ ‘ hospital immunity ” cases (Bing v. Thunig, 2 N Y 2d 656). We need not give privity in the present context, the undue value of capital letter; here, it has ceased to be functional and is only a vestigial remain.
Not insensible to the need of symmetry as well as certainty in the law, we conceive it to be yet more important that the law respond to reality; indeed, it need not remain insensitive to common humanity.
It need not stultify itself by making the terminal of privity at the very point where it becomes needful — where its usefulness really begins. In the case of highly advertised “baby foods,” for instance, what can be fairly and reasonably urged to deny a tender infant recovery because it cannot claim that an umbilical cord of privity attaches it to a monolithic “ chain store? ” TV, radio, billboard, magazine and newspaper advertising zoom forth strident ballyhoo and urgent “invitations to deal,” addressed to fathers and mothers, to be sure but actually intended for the special benefit of their infants — for whom the foods have been primarily processed.
As between weakening of privity in these food cases and diminishing consumer protection, common sense, as well as good conscience, permit no choice. “It is a melancholy state of affairs to witness courts more preoccupied with privity than consumer protection.” (Prof. Thomas F. Lambert, Jr., 21 N A O O A Law Journal 421.) We cannot yield to those who would view the matter from the “ icy heights ” of outmoded concept, and would overlay its nakedness with precedents which *886 we believe are no longer controlling because they are irrelevant. As Justice Holmes has said: “ It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.” (The Path of the Law, 10 Harv. L. Rev. 457, 469.)
The rule of privity is no longer pressed to the extreme of confining the right of recovery to the very individual who made the purchase. There has been a constantly mounting criticism leveled at the requirement of strict contractual privity in this type of ease. The criticism has been voiced both by the courts and by legal writers. An illuminating article on the subject was written recently by Justice George Starke of the Municipal Court of the City of New York (N. Y. L. J., April 8, 9 and 10, 1957, editorial page). Numberless law review articles have commented on its unreality; these are noted in the Starke article. (See, also, Melick, Sale of Food and Drink, pp. 83-84; 154-161.)
In the light of today’s conditions it is fair to say that the rule is all but an anachronism — weighed on the scales of reality, it is found wanting. And, indeed it has been rejected outright in some jurisdictions, and denigrated in others in “ domestic meals ” cases. This process has been supported on different bases: “household agency ”, “ agency for the consumer ”, or ‘ ‘ third party beneficiary ’ ’. The activating dynamic, however, has been constant, although variously called: “ public policy ”, ‘ ‘ breach of duty ”, “ privity imposed by operation of law ’ ’, and simply “ social justice ”. (Ward Baking Co. v. Trizzino, 27 Ohio App. 475; Davis v. Van Camp Packing Co., 189 Iowa 775; Swengel v. F. & E. Wholesale Grocery Co., 147 Kan. 555, 561-562 [note on this case 52 Harv. L. Rev. 328]; Klein v. Duchess Sandwich Co., 14 Cal. 2d 272; Welter v. Bowman Dairy Co., 318 Ill. App. 305.)
A review of the many cases in our own State, commencing with Chysky v. Drake Bros. Co. (235 N. Y. 468) in which the rule was applied that only one in contractual privity with the seller (be he manufacturer, distributor or retailer),- may assert a claim for breach of the implied warranty that food is fit for human consumption, is no longer fruitful or necessary. For, the most recent authoritative decisions have pointed in a different direction. Thus our courts have already allowed recovery by a husband whose wife bought the food (Ryan v. Progressive Grocery Stores, 255 N. Y. 388; Visusil v. Grant Co., 253 App. Div. 736). More recently one of two sisters who lived together was held entitled to enforce the implied warranty in respect of *887 food bought by the other (Bowman v. Great Atlantic & Pacific Tea Co., 284 App. Div. 663, affd. 308 N. Y. 780).
The case of Blessington v. McGrory Stores Corp. (305 N. Y. 140) was an action by the personal representative of a deceased child to recover for his pain and suffering caused by breach of warranty affecting an inflammable cowboy suit bought for the deceased by his father. Though the sufficiency of the complaint was not before the court, the ruling that the cause of action was governed by the contract period of limitation of six years may nevertheless be regarded as at least tacit recognition of the maintainability of an action for breach of warranty in the right of the infant arising from a purchase made by his parent.
If it is not altogether clear whether it is on the theory of implied agency or third-party beneficiary doctrine, or because it is a “ wrongful act, neglect or default ” (Greco v. Kresge Co., 277 N. Y. 26), it is manifest, nevertheless, that in these cases of the breach of an implied warranty of fitness for use in connection with the sale of foodstuffs, the traditional concept of privity no longer constrains the courts to an absurd as well as unconscionable result.
The judicial process modifies doctrine in the light of circumstances which have arisen since first announced. Though it is not within the competence of an intermediate appellate court to disregard controlling precedent, nevertheless, when the higher appellate courts —breaking new ground —• establish a new trend, and render it clear that if the instant question were before them they themselves would overrule earlier pronouncements, it becomes the right, nay the duty, of an intermediate court, to take cognizance of it. It is then, not creating one but broadening or extending the trend already set in motion by superior authority. ‘ ‘ Legal doctrines, as first enunciated, often prove to be inadequate under the impact of ensuing experience in their practical application. And when a lower court perceives a pronounced new doctrinal trend * * * it is its duty, cautiously to be sure, to folloiv not to resist it.” (Italics supplied — Perkins v. Endicott Johnson Corp., 128 F. 2d 208, 217-218 [C. C. A. 2d]; see, also, United States v. Ullmann, 221 F. 2d 760, N. 3.)
The wave of the present, as we have seen (Ryan v. Progressive Stores, supra; Visusil v. Grant Co., supra; Bowman v. Great Atlantic & Pacific Tea Co., supra; Blessington v. McCrory Stores Corp., supra) has been sweeping away the spurious barrier of privity in these cases. The current of the law is sufficiently potent to clear its own channel. We conceive it to be our duty, therefore, to recognize the event and to act on it.
*888 We are not unaware that there are those who are apprehensive that an erosion of privity in this area may lead to further erosion in other areas. But we do not consider hypothetical cases. We follow the traditional judicial process, i.e., we deal with the matter before us, and reach no other question. The language of Cabdozo, J., writing for the unanimous Court of Appeals in the Matter of State Ind. Comm. (224 N. Y. 13, 17-18) is apposite here: “ The record now before us supplies a pointed illustration of the need that the judicial function be kept within its ancient bounds. * * * We deal with the particular instance; and we wait till it arises.”
We have dealt only with the precise issue presented — we have held that Sheila may recover because we regard as no longer controlling those decisions which, heretofore, have denied recovery to an infant in circumstances like those obtaining here. (See Redmond v. Borden’s Farm Prods. Co., 245 N. Y. 512; Smith v. Hanson, 228 App. Div. 634; Zotto v. Merkel Bros., 229 App. Div. 793; Block v. Empire State Doughnut Corp., 233 App. Div. 774.) We are confident that when this ease reaches the higher appellate courts — as it should — this view will be vindicated.
Judicial leadership in those tribunals in our State has never been lacking to signalize, as well as initiate, any salutary advance in the law. Judge Desmond summed it up: “ Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it * * * to bring the law into accordance with present day standards of wisdom and justice rather than 1 with some outworn and antiquated rule of the past ’ * * * (to) adapt and alter decisional law to produce common-sense justice.” (Woods v. Lancet, 303 N. Y. 349, 354-355.)
Doubtless the Legislature has refrained from intruding amendatory legislation in the area we have been considering, because it has had these considerations in mind — it believes that a change in a principle originated by judicial decision can safely be left to and effected by decisional law to achieve the most salutary advance. And it must be aware, too, that the judical “ assault on the citadel of privity ” has been going on a long time — even before MacPherson v. Buick Motor Co. (217 N. Y. 382); Glanzer v. Shepard (233 N. Y. 236); Ultramares Corp v. Touche (255 N. Y. 170) —these and like cases are only milestones in that process. For as Professor Robert W. Miller said at the State Bar Association meeting early this year: “ Important as legislation may be perhaps the changes brought about by court decisions are more typical of the dynamic nature of tort law ” (N. Y. State Bar Bulletin, June, 1958, pp. 161,163). *889 We are not impressed, therefore, by the defendants-appellants ’ argument concerning the Legislature’s failure to pass remedial legislation.
The father was also entitled to recover. While the action is in form one for breach of warranty, in essence it is to recover for personal injuries, and, though the defendant is free from negligence, the breach of warranty is nevertheless a wrongful act (Greco v. Kresge Co., supra), and the father’s cause of action is auxiliary to the daughter’s. He himself was the purchaser. Though his damage flows from the personal injury suffered by his daughter, the ruling in Gimenez v. Great Atlantic & Pacific Tea Co. (264 N. Y. 390) does not deprive him of the cause of action which he asserts in his own right as purchaser.
The plaintiffs by their cross appeal complain of the inadequacy of Sheila’s recovery of $1,000 for a fractured tooth, since devitalized as the result of the fracture, with the attendant pain and suffering. Were the case before us in the first instance we might find merit in the plaintiff’s position. The assessment of damages is, however, primarily the function of the trial court, and the award here is, in our judgment, not so disproportionate as to justify interference with it by an appellate court.
The judgment should be affirmed, without costs.