Chief Judge Fuld.
The principal question posed on this appeal is whether a person who has sustained property damage caused by blasting on nearby property can maintain an action for damages without a showing that the blaster was negligent. Since 1893, when this court decided the case of Booth v. Rome, W. & O. T. R. R. Co. (140 N. Y. 267), it has been the law of this State that proof of negligence was required unless the blast was accompanied by an actual physical invasion of the damaged property— for example, by rocks or other material being cast upon the premises. We are now asked to reconsider that rule.
The plaintiff Spano is the owner of a garage in Brooklyn which was wrecked by a blast occurring on November 27, 1962. *14 There was then in that garage, for repairs, an automobile owned by the plaintiff Davis which he also claims was damaged by the blasting. Each of the plaintiffs brought suit against the two defendants who, as joint venturers, were engaged in constructing a tunnel in the vicinity pursuant to a contract with the City of New York.[1] The two eases were tried together, without a jury, in the Civil Court of the City of New York, New York County, and judgments were rendered in favor of the plaintiffs. The judgments were reversed by the Appellate Term and the Appellate Division affirmed that order, granting leave to appeal to this court.
It is undisputed that, on the day in question (November 27, 1962), the defendants had set off a total of 194 sticks of dynamite at a construction site which was only 125. feet away from the damaged premises. Although both plaintiffs alleged negligence in their complaints, no attempt was made to show that the defendants had failed to exercise reasonable care or to take necessary precautions when they were blasting. Instead, they chose "to rely, upon the trial, solely on the principle of absolute liability either on a tort theory or on .the basis of their being third-party beneficiaries of the defendants’ contract with the city. At the close of the plaintiff Spano’s case, when def endants ’ attorney moved to' dismiss the action on the ground, .among others, that no negligence, had been proved, the trial judge expressed the view that the defendants could be held liable even ■though they were not shown to have been careless. The case then proceeded, with evidence being introduced solely on the question of damages and proximate cause. Following the trial, the court awarded damages of some $4,400 to Spano and of $329 to Davis.
On appeal, a divided Appellate Term reversed that judgment, declaring that it deemed itself concluded by the established rule in this State requiring proof of negligence. Justice Markowitz, *15 who dissented, urged that the Booth case should no longer be considered controlling precedent.
The Appellate Division affirmed; it called attention to a decision in the Third Department (Thomas v. Hendrickson Bros., 30 A D 2d 730, 731), in which the court observed that “ [i]f Booth is to be overruled, ‘ the announcement thereof should come from the authoritative .source and not in the form of interpretation or prediction by an intermediate appellate court ’ ”.
In our view, the time has come for this court to make that “ announcement ” and declare that one who engages in blasting must .assume responsibility, and be liable without fault, for any injury he causes to neighboring property.
The concept of absolute liability in blasting cases is hardly a novel one. The overwhelming majority of American jurisdictions have adopted such a rule. (See Prosser, Torts [2d ed.], § 59, p. 336; 3 Restatement, Torts, §§ 519, 520, comment e; Ann., 20 ALR 2d 1372. )[2] Indeed, this court itself, several years ago, noted that a change in our law would "conform to the more widely (indeed almost universally) approved doctrine that a blaster is absolutely liable for any damages he causes, with or without trespass”. (Schlansky v. Augustus V. Riegel, Inc., 9 N Y 2d 493,496.)
We need not rely solely, however, upon out-of-state decisions in order to attain our result. Not only has the rationale of the Booth case (140 N. Y. 267, supra) been overwhelmingly rejected elsewhere but it appears to be fundamentally inconsistent with earlier cases in our own court which had held, long before Booth was decided, that a party was absolutely liable for damages to neighboring property caused by explosions. (See, e.g., Hay v. Cohoes Co., 2 N. Y. 159; Heeg v. Licht, 80 N. Y. 579.) In the Hay case (2 N. Y. 159, supra), for example, the defendant was engaged in blasting an excavation for a canal and the force of the blasts caused large quantities of earth and stones to be thrown against the plaintiff’s house, knocking down his stoop *16 and part of Ms cMmney. The court held the defendant absolutely liable for the damage caused, stating (2 N. Y., at pp. 160-161):
‘ ‘ It is an elementary principle in reference to private rights, that every individual is entitled to the undisturbed possession and lawful enjoyment -of his own property. • The mode -of enjoyment is necessarily limited by the rights -of others—otherwise it might be made destructive of their rights altogether. Hence the maxim sic útere tuo, Sc. The defendants had the right to dig the canal. The plaintiff the right to the undisturbed possession -of his property! If these rights conflict, the former must yield to the latter, as the more important of the two, since, upon grounds of public policy, it is better that one man should -surrender a particular use of his land, than that another should be deprived of the beneficial use -of his property -altogether, which might be the consequence if the privilege'of the former should be wholly unrestricted. ' The case before us illustrates this principle. For if the defendants in -excavating their canal, in itself a lawful use -of their land, could, in the manner mentioned by the witnesses, -demolish the stoop of the plaintiff with impunity, they might, for the same purpose, -on the exercise of reasonable care, demolish , his' house, and thus deprive him of all use of his property.” -
Although the court in Booth drew -a distinction between -a situation— such as w-as presented in the Bay case—Where there was “ a physical invasion ” of, -or trespass -on, the plaintiff’s property and one in which the damage.was caused by “ setting the air in motion, or in some other unexplained way ” (140 N. Y., at pp. 279, 280), it is clear that the court, in the earlier cases, was not concerned with the particular manner by which the damage was caused but by the -simple fact that any explosion in a built-up area was likely to cause damage. Thus, in Heeg v. Licht (80 N. Y. 579, supra), the court held that there should be absolute liability where the damage was caused by the accidental explosion of stored gunpowder, even in the absence of a physical trespass (p. 581):
“ The defendant had erected a building and -stored materials therein, which from their character were *17 . liable .to .and actually did explode, causing injury to the plaintiff. The fact that the explosion took place tends to establish that the magazine was danger ous and liable to cause damage to the property of persons residing in the vicinity. * * * ' The fact that the magazine was liable to such a contingency, which could not be guarded against or averted by the greatest degree of care and vigilance, evinces its dangerous character, * * * In such a case, the rule which exonerates a party engaged in a lawful business, when free from negligence, has no application. ’ ’
Such reasoning should, we venture, have led to the conclusion that the intentional setting off of explosives — that is, blasting— in an area in which it was likely to cause harm to neighboring property similarly results in absolute liability. However, the court in the Booth case rejected such an extension of the rule for the reason that “ [t]o exclude the defendant from blasting to adapt its lot to the contemplated uses, at the instance of the plaintiff, would not be a compromise between conflicting rights, but an extinguishment of the right of the one for the benefit of the other ” (140 N. Y., at p. 281). The court expanded on this • by stating, [1] ‘ This sacrifice, we think, the law does not exact. Public policy is promoted by the building up of towns and cities and the improvement of property. Any unnecessary restraint on freedom of .action of a property owner hinders this.”
This rationale cannot withstand analysis. The plaintiff in Booth was not seeking, as the court implied, to “ exclude the defendant from blasting ” and thus prevent desirable improvements to the latter’s property. Rather, he was merely seeking compensation for the damage which was inflicted upon his own property as a result of that blasting. The question, in other words, was not whether it was lawful or proper to engage in blasting but who should bear the cost of any resulting damage — the person who engaged in .the dangerous activity or the innocent neighbor injured thereby. Viewed in such a light, it clearly appears that Booth was wrongly decided and should be forthrightly overruled.
In more recent oases, our court has already gone far toward mitigating the harsh effect of the rule laid down in the Booth case. Thus, we have held that negligence can properly be *18 inferred from the mere fact that a blast has caused extensive damage, even where the plaintiff is unable to ¡show ‘ ‘ the method of blasting or -the strength -of the charges -or the character of the .soil .or rock.” (Schlansky v. Augustus V. Riegel, Inc., 9 N Y 2d 493, 497, supra; see, also, Brown v. Rockefeller Center, 289 N. Y. 729.) But, even under .this liberal interpretation of Booth, it would still remain possible for a defendant who engages in blasting operations—which he realizes are likely to cause injury — to' avoid liability by showing that he ■ exercised reasonable care. Since blasting involves a substantial risk of harm no matter the degree of care exercised, we perceive no reason for ever permitting .a person who engages in such an activity to impose this risk upon nearby persons or property without assuming responsibility "therefor.
Indeed, the defendants devote but brief .argument in defense of the Booth rule. The principle thrust of their -argument is directed not to the requisite standard of care to be used but, rather, to the sufficiency .of the plaintiffs’ pleadings and the proof adduced on the issue of causation.[3]
As to the sufficiency of the pleadings, we need but point out that both Spano’s and Davis’s complaints alleged that the defendants engaged in blasting operations which resulted in damage -to their respective property. Thus, they contained adequate “notice of the transactions * * * intended to be proved and the material elements -of [the] cause .of action ” (CPLR 3013). The fact that, in Davis ’is case, these allegations were subsumed in a cause -of action for .negligence is immaterial, since the inclusion of unnecessary additional allegations does not affect" the -sufficiency of a complaint. (See, e.g., Rager v. McCloskey, 305 N. Y. 75, 80; Abbey v. Wheeler, 170 N.Y. 122, 127.)
There .remains, then, .only the matter of proof -on the issue -of causation. Although the evidence adduced by the plaintiffs on this question was entirely circumstantial, it m-ay not be said that it was -insufficient as a matter of law. The plaintiffs ’ prin *19 cipal witness was a contractor who had leased a portion of the premises from Spano. It was hi.s testimony that there was no damage on or to the premises prior to November 27; that he had heard an explosion at about noon on that day while he was working some three blocks away and that, when he returned a few hours later, the building [1] ‘ was cracked in the wall * * * the window broke, and the cement floor .all pop up.” In addition, an insurance adjuster, an expert with wide experience in handling explosion claims, who inspected the damage to Davis’s car, testified that the damage was evidently “ caused by a concussion of one form or another.” The defendants-’ expert attributed the damage to another cause — poor maintenance and building deterioration—but,' admittedly, the defendants were engaged in blasting operations in the area at the time and, as the Appellate Term expressly found, the -inference that this was the cause of the damage could properly be drawn. Even though the proof was not insufficient as a matter of law, however, the Appellate Division affirmed on the sole ground that no negligence had been proven against the defendants and thus had no occasion to consider the question whether, in fact, the blasting caused the damage. That being so, we must remit the case to the Appellate Division so that it may pass upon the weight .of the evidence (CPLR 5501, subd. [c]; 5613; see Spett v. President Monroe Bldg. & Mfg. Corp., 19 N Y 2d 203).
The .order appealed from'should be reversed, with costs, and the matter remitted to the Appellate Division for further proceedings in accordance with this .opinion.
Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed, etc.

. Spano’s complaint stated three causes of action: the first under the defendants’ contract with the city which, it was alleged, was intended to provide recovery to neighboring property owners for any damages resulting from the job; the second, in which it was only alleged that the defendants’ blasting caused damage to the plaintiff’s property; and the third which contained an allegation of negligence. Davis served only a short form complaint, containing a single cause of action sounding in negligence.

. See, e.g., Exner v. Sherman Power Constr. Co., 54 F. 2d 510 (2d Cir.); Colton v. Onderdonk, 69 Cal. 155; Whitman Hotel Corp. v. Elliot & Watrous Eng. Co., 137 Conn. 562; FitzSimons & Connell Co. v. Braun, 199 Ill. 390; Louden v. City of Cincinnati, 90 Ohio St. 144; Hickey v. McCabe é Bihler, 30 R. I. 346.

. All parties —- plaintiffs and defendants — also. address themselves at length to a discussion of the plaintiffs’ rights under the defendants’ contract with the city. Although, in the view we have taken, it is unnecessary to consider this question, we would merely note that the clause relied upon by the plaintiffs appears to be nothing more than a promise to hold the city harmless for any liability incurred by the defendants. It was clearly not intended to have any effect on the nature of the defendants’ liability or to create rights in third persons.