OPINION OF THE COURT
Per Curiam.
Order entered March 1, 1993 affirmed, with $10 costs.
This maritime action seeks recovery of property damage allegedly caused to commercial premises owned by plaintiffs subrogor as a result of offshore blasting undertaken by defendant in connection with dredging operations conducted under the auspices of the United States Army Corps of Engineers to improve navigation in the Kill Van Kull and Newark Bay Channels. On appeal from, inter alia, the denial of its motion for summary judgment, defendant argues principally that Civil Court erred in measuring its liability by a strict liability standard rather than one based on fault. We conclude that the proper liability test was applied below, and thus affirm.
Although a maritime action instituted in State court generally is governed by Federal maritime principles (Celeste v Prudential-Grace Lines, 35 NY2d 60, 62-63), a maritime action is appropriately decided under relevant State law in the situation where, as here, Federal law provides no clear precedent on the legal issues presented (see Igneri v Compagnie de Transports Oceaniques, 323 F2d 257, 259 [2d Cir]; Maru Shipping Co. v Burmeister & Wain Am. Corp., 528 F Supp 210, 214 [SD NY]).
Under modern principles of liability now recognized in this State, one who engages in an inherently dangerous or ultra-hazardous activity such as the blasting operations undertaken by the defendant in this case is held liable without fault for injury caused to neighboring property with or without trespass (Spano v Perini Corp., 25 NY2d 11). Nor, in the circumstances, may defendant avoid application of a strict liability standard by virtue of its status as a Government contractor engaged in a public work. It is true, as defendant points out, that a Government contractor in defendant’s position would have been immune from liability absent proof of negligence under pre-Spano decisional law (see, Benner v Atlantic Dredging Co., 134 NY 156 [1892]). The holding in Benner, however, is incompatible with the broadly stated strict liability rule adopted in Spano and is no longer controlling. In this regard it need be emphasized that the result in Spano represented a *596 major departure from prior decisional law, with the Court of Appeals expressly and "forthrightly” (Spano v Perini Corp., supra, at 17) overruling the long extant and much criticized rule of Booth v Rome, Watertown & Ogdensburg Term. & R. R. Co. (140 NY 267), a case which had cited approvingly to Benner for the proposition that property damage caused by blasting done in accordance with a Government contract was "remediless” absent proof of fault (Booth v Rome, Watertown & Ogdensburg Term. R. R. Co., supra, at 279). And while the precise issue of the proper duty of care of a Federal Government contractor for blasting activity was not the focus of the litigation in Spano, the Court’s strongly worded opinion holding "one who engages in blasting” absolutely liable " 'for any injury’ ” (supra, at 15) leaves little doubt as to the preferred resolution of the issue. Along these same lines, the following passage from Spano could not have been more pointed or emphatic: "Since blasting involves a substantial risk of harm no matter the degree of care exercised, we perceive no reason for ever permitting a person who engages in such an activity to impose this risk upon nearby persons or property without assuming responsibility therefor.” (Supra, at 18 [emphasis added].)
In view of the salient public policy concerns underlying the strict liability rule of Spano (supra), we can think of no cogent policy reason, and defendant has not articulated any, for continuing to adhere to the ancient and contradictory fault rule of Benner (supra). As one court has stated in similar circumstances: "Looked at from the viewpoint of a property owner, damage to his property is just as real when it results from blasting in connection with a public work as when it results from dynamiting in pursuance to a purely private enterprise. If the property owner is to be compensated in the one case, he should be compensated in the other. The advantages to society of a public work are not so great as to require that private citizens suffer damage without compensation.” (Whitman Hotel Corp. v Elliott & Watrous Eng’g Co., 137 Conn 562, 572, 79 A2d 591, 596.) Notably, this view is shared by the substantial majority of jurisdictions that have considered the point (see, e.g., Whitney v Myers Contr. Corp., 146 W Va 130, 118 SE2d 622; Lobozzo v Adam Eidemiller, Inc., 437 Pa 360, 263 A2d 432; Walczesky v Horvitz Co., 26 Ohio St 2d 146, 269 NE2d 844; Lowry Hill Props. v Ashbach Constr. Co., 291 Minn 429, 194 NW2d 767; cf., Green & Co. v Thomas, 205 Va 903, 140 SE2d 635).
*597 Though mindful of our responsibility as an intermediate appellate court to apply the law as defined by higher appellate authority, we reject the notion that we must blindly adhere to the century-old fault rule of Benner (supra) — a rule sharply at odds with the change of direction signaled by the Court of Appeals later pronouncement in Spano (supra) — out of ritualistic deference to principles of stare decisis. "The judicial process modifies doctrine in the light of circumstances which have arisen since first announced. Though it is not within the competence of an intermediate appellate court to disregard controlling precedent, nevertheless, when the higher appellate courts — breaking new ground — establish a new trend, and render it clear that if the instant question were before them they themselves would overrule earlier pronouncements, it becomes the right, nay the duty, of an intermediate court, to take cognizance of it. It is then, not creating one but broadening or extending the trend already set in motion by superior authority. 'Legal doctrines, as first enunciated, often prove to be inadequate under the impact of ensuing experience in their practical application. And when a lower court perceives a pronounced new doctrinal trend * * * it is its duty, cautiously to be sure, to follow not to resist it. ’ (Italics supplied — Perkins v. Endicott Johnson Corp., 128 F.2d 208, 217-218 [C.C.A. 2d]; see, also, United States v. Ullmann, 221 F.2d 760, N. 3).” (Greenberg v Lorenz, 12 Misc 2d 883, 887 [App Term, 1st Dept].)
Parness, J. P., Miller and Glen, JJ., concur.